JOHN G. PATTERSON v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY.

*Carriers of passengers—Injury to passengers from negligent use of track by lessees thereof other than the carrier—Depositions.*

1. One who is injured by the wrongful or negligent act of several persons can sue them jointly or severally as he pleases.

2. The maxim *Sic utere tuo alienum non lædas* applies to a railway company that has a right of passage over the track of another, and binds it so to use its right as not by negligence to injure others having like rights.

3. A railway passenger traveling over a leased track has no contract relations with any other lessee of the track than the company which carries him; and if he is injured in consequence of the negligence

of some other lessee in its use of the track his only remedy is by an action in tort for the latter's breach of its duty to so use it as not to injure him.

4. Depositions, in Michigan, have no validity unless the terms of the statute under which they are taken (How. Stat. § 7461) are substantially followed, or expressly waived; and under the implications of the statute and the uniform practice the name of the witness to be examined must be correctly given in the notice that the deposition will be taken. The examination of James Horan is not authorized by a notice that the deposition of Patrick Horan will be taken; and James Horan's deposition would be inadmissible.

5. The facts making it necessary to take a deposition are not required by statute to be set forth in an affidavit served upon the adverse party; it is enough if they are given in the notice to him that such deposition will be taken. But before a deposition can be put in evidence it must be shown to the court that some one of the statutory reasons exists for taking it; and the affidavit would be prima facie proof thereof, where the practice is to serve it.

6. A brakeman's admission that he caused a railway accident, is inadmissible as res gestæ in an action arising therefrom against the company by which he is employed, if his statement was not made in the execution of his duty or while the act to which it referred was in progress; nor can it bind the company as the admission of an agent, if it does not appear that the act done was in the line of his duty.

7. After a railway accident caused by a misplaced switch a person purporting to be a brakeman declared that he had caused it and had opened the switch. *Held*, that evidence of this declaration would be no better than hearsay as to the fact about the switch.

Error to Wayne. (Chambers, J.) April 24.—June 11.

CASE. Defendant brings error. Reversed.

*Alfred Russell* for appellant. An agent's declarations are not evidence against his principal unless made while engaged in the latter's business and as part of the facts : *Mich. Cent. R. R. v. Coleman* 28 Mich. 446; *Barker v. Binninger* 14 N. Y. 270; *Luby v. H. R. R. R.* 17 N. Y. 131; *Sisson v. C. & T. R.* 14 Mich. 489 ; *M. C. R. v. Gougar* 55 Ill. 503 ; *C. C. &c. Co. v. Wilson* 26 Ohio 81, 85 ; *M. C. R. v. Carrow* 73 Ill. 348; *C. B. & Q. R. R. Co. v. Riddle* 60 Ill. 534 ; *Whitaker v. Eighth Ave. R. R. Co.* 51 N. Y. 295, reversing 5 Rob. 650; *C. & N. W. R. R. Co. v. Fillmore* 57 Ill. 265 ; *Penn. R. R. Co. v. Books* 57 Penn. St. 339; *Bellefontaine R. R. Co. v. Hunter* 33 Ind. 335 ; *Agassiz v. London Tram-*

*way Co.* Fish. Dig. (1873) 246; a servant is alone answerable for a wanton violation of law though done while he was occupied with his employer's business: *Moore v. Sanborne* 2 Mich. 519, 529; *M'Manus v. Crickett* 1 East 106; *Lyons v. Martin* 8 Ad. & El. 512; *Croft v. Alison* 4 B. & Ald. 590: Angell & Ames on Corp. § 388; *Crocker v. New London Co.* 24 Conn. 249; *Selma Co. v. Webb* 49 Ala. 240; *Wright v. Wilcox* 19 Wend. 343; *Vanderbilt v. R. T. Co.* 2 N. Y. 479; *Isaacs v. Third Ave. R. R.* 47 N. Y. 122; *Rounds v. D. L. & W. R. Co.* 64 N. Y. 129; *Hibbard v. N. Y. & E.* 15 N. Y. 455; *Thames S. B. Co. v. H. R. R.* 24 Conn. 40; *Mali v. Lord* 39 N. Y. 381; *U. S. v. City Bank* 21 How. 356; it is for the court and not the jury to say whether the act was willful and not binding the defendant: *Thrings v. C. P. R. Co.* 7 Rob. 616; *Roth v. B. & S. R.* 34 N. Y. 548, 553; *Mackay v. N. Y. C.* 27 Barb. 528; *Calkins v. Barger* 44 id. 424; *Gonzales v. N. Y. & H. Rd.* 38 N. Y. 440; the main purpose of the employee to serve his employer has no tendency to bring his act within the course of his employment; thus: where a female servant having authority to light fires in a house, but not to clean chimneys, lighted a fire for the sole purpose of cleaning a chimney, *held*, that her employer was not liable for an injury caused by her negligence in lighting the fire: *Mackenzie v. McLeod* 10 Bing. 385; where a brakeman forced a trespasser from a freight car in motion and caused him to fall through a bridge the company was held not liable: *Marion v. C. R. I. & P.* 59 Iowa 428, 430; so where a brakeman drove off a trespasser from a train and caused him to slip and fall: *Towanda v. Heeman* 86 Penn. St. 418; a servant has no implied authority to do acts outside the kind of service for which he is employed: *Robertson v. N. Y. & E. Rd.* 22 Barb. 91; *Snyder v. H. & St. J.* 60 Mo. 413; *Hoar v. M. Cent. Rd.* 70 Me. 65; *Flower v. Penn. Co.* 69 Penn. St. 210; *L. M. Rd. Co. v. Wetmore* 19 Ohio St. 110; *Allen v. L. & S. W. Ry.* L. R. 6 Q. B. 65; *Walker v. S. E. Co.* L. R. 5 C. P. 640; *Howe v. Newmarch* 12 Allen 49; *DeCamp v. M. & M.* 12 Iowa 348; *E. & C. R. v. Baum* 26 Ind. 70; *I. C. R. v. Downey* 18 Ill. 259; *Pittsburg A. & M. Co. v. Donahue* 70 Penn. St. 109; *N. O. R. R. v. Harrison* 48 Miss. 112; *Glover v. L. & N. W.* 5 Exch. 66; a passenger who has received an injury upon a railroad is entitled to recover against the company with which he contracts, and not against its lessor or lessee even though the injury was caused by the latter's negligence: Pierce on Railroads 283; *Ill. Cent. R. R. v. Barron* 5 Wal. 90; *McElroy v. Nashua*

*R. R.* 4 Cush. 400; *Murch v. Concord R. R.* 29 N. H. 9; *Winterbottom v. Wright* 10 M. & W. 109; *Parker v. R. & S. R. R.* 16 Barb. 315.

*Isaac Marston,* for appellee, cited as to whether statements made immediately after an injury by the injured individual were res gestæ, *Lambert v. People* 29 Mich. 71; *Mabley v. Kittleberger* 37 Mich. 360; *People v. Marble* 38 Mich. 123; *Cleveland v. Newsom* 45 Mich. 62; *People v. Simpson* 48 Mich. 479; *Com. v. M'Pike* 3 Cush. 181.

CHAMPLIN, J. Plaintiff brought suit against defendant, and alleged in his declaration that " on or about the 27th day of March, 1883, the plaintiff was proceeding on a train of cars running from Toledo, Ohio, to Columbus, Ohio, on the Columbus, Hocking Valley & Toledo Railway, and was a regular passenger upon said train, and said train had reached a point at East Toledo, where, from the main line on which it was proceeding, there branched off a side line running up the east branch of the Maumee river, upon which branch line the said defendant was moving a train of cars, and it was the duty of the said defendant to stop its said train at said point, and to await orders, and not to open the switch there until it had received the order, nor until the said train had passed on which the said plaintiff was being carried ; and it was further its duty to have a safe and convenient switch at said point, and to have a switchman there, so that said switch would not be opened while said train was passing on which this plaintiff was being carried, and to have such a switch that, if opened, those running said train could perceive it and arrest said train in time ; yet the said defendant so negligently and unskillfully conducted themselves in and about the management of their said train on the said side track and switch, that they had at that point a switch of an old, disused and dangerous pattern, and so constructed that the approaching train could not readily perceive when the same was opened ; that they had no regular attendant upon said switch ; that they did not arrest their said train and await for orders before entering upon the track which was being used by the said train on which said plaintiff was

being carried, nor wait until the said train had passed, but negligently and carelessly, and without fault on the part of this plaintiff, opened the said switch and prepared to carry their train from said branch track unto the track over which plaintiff was approaching, and then and there caused plaintiff's train to leave the track on which it was running and enter on said branch or side track, and precipitated the same upon the train of the said defendant, whereby the said trains were brought together with great force and violence, and the said plaintiff" received the injury complained of.

It appeared in evidence, on the trial of the cause, that on the 25th day of March, 1883, the plaintiff bought a ticket at Toledo, Ohio, for a passage over the Columbus, Hocking Valley & Toledo Railway Company, from Toledo to Columbus, and entered the train about five o'clock in the morning, which started at that time for Columbus. It appeared from other testimony in the case that the track upon which the car in which the plaintiff was being conveyed ran, was owned by the Pennsylvania Railway Company, and that the Columbus, Hocking Valley & Toledo Railway Company was operated by the Pennsylvania Company for five miles out of Toledo, and that at East Toledo, and within the corporate limits of the city of Toledo, and about one mile east of the place from which the coach containing the plaintiff started, there was a branch track and a switch at the junction of the two tracks, and that the branch track and the switch, as well as the main track, were the property of the Pennsylvania Company; that the Pennsylvania Company maintained the switch, and had an employee whose duty it was to place lights upon it at night, and remove them in the morning; that when said switch was closed a white light was shown up and down the main track each way, and that when it was opened two red lights were caused to be shown up and down the main track each way by the act of opening. It also appeared that at the junction of the branch and main tracks there was a telegraph office owned by the Pennsylvania Company, and in it a telegraph operator who was the servant of the Pennsylvania Company, and whose duty it was to see

that said light was kept burning at night. It further appeared that the defendant company, by arrangement with the Pennsylvania Company, had the right to run its freight trains over the said branch track upon the main track at said switch, and thence over the main line, a distance of about one mile from East Toledo, into the Pennsylvania yards at Toledo, upon payment of a toll of one dollar per loaded car.

It appeared that the train in which the plaintiff was conveyed left Toledo while it was yet dark, and on the main track, and that the defendant's freight train was waiting on the branch track, and that the conductor of said freight train, having a key to the said switch in his pocket, which key had been furnished him by the Pennsylvania Company, was inside the telegraph operator's office waiting to receive orders to enter Toledo; that the custom was for the train desiring to use said switch to pass upon the main track and to open said switch, and that by the rules and practice of the defendant company the brakemen of the freight train had no authority to open said switch until directed so to do by the conductor of the freight train, and until furnished by him with the key to the switch, but the brakeman did sometimes open the switch without order when it was found unlocked. It appeared that the engine near the train in which the plaintiff was conveyed was proceeding at the rate of from 15 to 18 miles an hour, and that as he came near the switch, about six minutes after leaving Toledo, he saw that there was no light on the switch, and he also saw the freight train of the defendant and the headlight of the engine of said freight train standing still upon the branch track.

Certain rules of the Pennsylvania Company were put in evidence, from which the defendant claimed that it was the duty of said engineer to have halted until he could ascertain with certainty whether or not the switch was open, there being no light upon it; that said engineer, however, did not halt, and the switch being open, the train conveying the plaintiff passed off the main track and upon the branch track, and collided with the defendant's freight train standing still upon said branch track. The defendant also put in evidence

rules of the Pennsylvania Company in regard to lights and speed. The copies of the rules read in evidence are given in the margin.[1]

The engineer of the plaintiff's train, on cross-examination, testified as follows:

*Question.* If there had been a light there to indicate that the switch was open, the accident would not have occurred, would it?

*Answer.* No, I don't think the collision would have occurred.

*Q.* If you had come to a dead stop and stood until you had found out how the switch was, there would have been no collision?

*A.* There would not be apt to be a collision if I had stood still, but I supposed the switch was right.

---

[1] The rules referred to are as follows:

"Where any train does not stop at any point where another train is to be met or passed, the speed of the former must be reduced in passing switches to ten miles per hour, and extra watchfulness must be used to see that all is safe. If not absolutely sure the switches are right and everything safe, a complete stop must be made. When any train, whether passenger, freight or extra, is on a siding for a passenger train to meet or pass them after dark, a light must be shown if practicable, at each main track switch, giving the proper signal that all is right. In any case the light must be shown at the switch in the direction from which the passenger train is approaching, and in such case special effort must be made to make sure that all is safe at all main track switches.

"None but properly authorized employes of the company shall be permitted to attend switches. Those in charge of trains must give men who are attending switches ample time to throw and fasten the same properly, and must never attempt to use said switches without proper signals to do so from men attending them. If necessary, trains must absolutely stop and wait for such signals.

"The absence of proper signals at switches or crossings where usually shown, indicates possible danger and requires engine-men to halt and ascertain that all is right.

"The absolute general rule for all switches when not in actual use, is that they must be set for the main track and locked.

"They must not rely upon air-brakes in approaching railroad crossings, or meeting points where there is a possibility of striking other trains or other specially dangerous points, but must reduce speed and approach such points under full control.

"They will approach stations, switches and road crossings watchfully, and strictly observe the rules relative to signals.

"Engine-men are required to observe the position of all switches, and if there be levers, targets, or lights, to see that they indicate that switches are properly adjusted. They must know, so far as it is possible for them to do so, that switches are right before attempting to pass or use them. If wrong, the engine or train must, if possible, be stopped at once.

"The position of targets at night will be shown by two red lights."

It further appeared that the switch was allowed to remain unlocked nearly half the time; that the engineer above mentioned, about forty minutes before the collision, had backed his engine upon the main track and passed this switch in going into Toledo to make up his train in the Pennsylvania yard, and that the switch was closed then; that the switch was called a Wharton switch, and that an engine passing over it into Toledo would not, if the switch were open, leave the track, although an engine passing out of Toledo would, if the switch were open, leave the track and pass upon the branch track.

The first question I shall consider is whether the evidence discloses such a state of facts as would render the defendant liable, assuming that it was through the negligence of one of its brakemen that the collision occurred. It is unnecessary to decide whether, under the testimony in this case, the plaintiff could have maintained an action against the Columbus, Hocking Valley & Toledo Railway Company, founded on his contract relations with that company, or, waiving that, he could have maintained an action on the case against such company, based on its negligence in so running its train in disregard of the rules governing it, for the safe conveyance of its passengers, as to precipitate its train against the train of defendant, whereby he was injured; or whether he could have brought his action against the Pennsylvania Railway Company, founded on its duty to keep its railroad and switches in good and safe condition for the transportation of passengers over its road, and its negligent breach thereof. In most cases of tort the plaintiff has a choice of remedies, and where there is more than one party guilty of the wrongful or negligent act which caused the injury, he has the right to proceed against them jointly or severally, as he may choose. There existed no contract relations between plaintiff and defendant, and the only foundation for a right of action against it must rest upon some breach of duty which defendant owed to plaintiff. The defendant, having a right to use the track of the Pennsylvania Railway Company to pass its trains from the branch track to Toledo, undoubtedly owed a duty to other

parties having a like right of passage, to so use it as not to cause injury to others through the negligence of defendant. The maxim *Sic utere tuo alienum non lœdas* applies to such a case; and if the defendant did, by its negligent act, open the switch and thus cause the collision by which the plaintiff was injured, defendant must respond in damages.

The court below charged the jury that he would submit to them the real question, which, in the judgment of the court, was at issue: Whether the employees of the defendant, engaged within the scope of their duty, opened or left open the switch negligently by which the accident occurred, and if the jury should so find, then the plaintiff would be entitled to a recovery. The jury, having found a verdict for the plaintiff, must have found that the employees of defendant, acting within the scope of their duty, negligently opened, or left open, the switch, and unless such fact was established by testimony that ought to have been excluded from the consideration of the jury, their verdict must stand.

The deposition of James Horan was received in evidence against the defendant's objection, viz.: *first*, because the notice does not state under what statute the deposition is taken, nor does the magistrate return what statute he proceeds under; *second*, because no affidavit was filed and served upon the defendant, showing the circumstances and facts required by the statute for the taking of the deposition; *third*, because the notice was to take the testimony of Patrick Horan, and the testimony of James Horan was taken instead, and the objection was entered in season before the deposition of James Horan was reduced to writing, the defendant having appeared specially to take the objection, and not having cross-examined; *fourth*, because the deposition was not filed until about three months after it was taken, as appears from the entry of the clerk on the back; and *fifth*, because no notice of the filing of the deposition was given to defendant, and the defendant was authorized to believe the deposition had been abandoned.

The deposition, notice of taking, proof of service, and

officer's return, are annexed to the record, and make a part thereof. The notice served (omitting the title of the court and cause) reads as follows:

" Please to take notice that on Friday next, the 21st day of September, 1883, at 11 o'clock in the forenoon, Patrick Horan will be examined as a witness on the part of the plaintiff in this cause, before Patrick McKernan, Esq., circuit court commissioner for the county of Washtenaw, at his office in the city of Ann Arbor, in said county, at which time and place you are at liberty to appear before the said commissioner and put such interrogatories to the said witness as you may think fit.

ATKINSON & ATKINSON, Pl'ffs Attys.

*To Alfred Russell, Esq., Def"t's Atty."*

Proof by affidavit of service of a true copy on the 15th day of September, 1883, is annexed to the notice. It will be observed that the notice gives no place of residence of the witness to be examined, and states no cause for taking thereof. In the caption of the depositions the officer states that they are taken " pursuant to the notice hereunto annexed, and for the reasons therein stated." The law (How. Stat. § 7468) requires the person taking the deposition to annex thereto a certificate of the time and manner of taking it, the person at whose request and the cause or suit for which it was taken, and the reason for taking it, &c. The certificate annexed to the deposition complies with this section of the statute, with the exception that it does not state the reason for taking it. Depositions taken under this statute can have no validity unless they comply substantially with the provisions enacted by the Legislature ; and no departure can be allowed from the requirements which the Legislature have seen fit to impose. *Campau v. Dewey* 9 Mich. 381 ; *Wattles v. Moss* 46 Mich. 52. How. Stat. § 7460 provides that when a witness whose testimony is required in any civil cause pending in this State shall live more than thirty miles from the place of trial, or shall be about to go out of the State and not to return in time for the trial, or is so sick, infirm or aged as to make it probable that he will not be

able to attend the trial, his deposition may be taken in the manner thereinafter provided. The three following sections provide for the notice to be given, by whom, and the time and manner of service. Although the statute does not in express words declare that the name of the witness proposed to be examined shall be given in the notice, yet it is clearly implied by its terms that the name of the witness shall be given in order to apprise the adverse party who it is he proposes to examine, as well as the time and place where he will be examined; and such has ever been the uniform practice in this State, whenever the depositions of witnesses are taken, unless by express stipulation waiving such requirement. The notice given to examine Patrick Horan did not authorize the examination of James Horan, and the deposition ought to have been excluded on the strength of this objection alone. The first, fourth and fifth objections are untenable. The third was good. As to the second, the statute does not require an affidavit to be served upon the defendants showing the circumstances and facts required by the statute for the taking of the depositions. It is sufficient that the reasons required by the statute appear in the notice; but before such depositions can be read in evidence, the party producing them must make it appear satisfactorily to the court, by prima facie proof at least, that some one of the causes provided by the statute and stated in the notice authorizing their taking existed at the time and continues to exist; and where the practice has been pursued of attaching to the notice an affidavit setting forth the existence of one of the causes for taking the deposition as set forth in the statute, such affidavit would be prima facie evidence of such fact.

The plaintiff was called as a witness for himself, and testified that at the time of the collision he was sitting in his seat, as if on the edge, and leaning back about straight, with his feet braced on the brace under the next seat, and that the jar of the train caused him to double up,—to shut up like a hinge; that he was sitting next the window, and his wife next the aisle in the same seat; that his wife asked him

what was the matter, and then the plaintiff stood up in the aisle; that a good many people were thrown into the aisle, and others thrown over their seats; that after the people were out of the aisle the plaintiff got up and moved into the next car, into which the fireman and engineer had been brought; the fireman was pretty badly cut about the head, and that the plaintiff took hold of and washed his head; that he, plaintiff, thought he was severely shocked, but could not think he was seriously hurt; that the train was drawn back into the depot, a new train made up, and that the plaintiff and his wife took passage on the new train that was made up, and went on towards Columbus; that, while the plaintiff was washing the fireman's head, there was a man came in and looked at the fireman and said, "I am the fool"—

Objection was here made by the counsel for the defendant that what the man said was hearsay testimony and ought not to be admitted, and asked the court to stop the witness, and not allow him to state anything further. As a further ground of objection, counsel for defendant stated that it did not appear that the man who said something had any connection with the defendant; *second*, that the statement is not a part of the res gestæ; that it appears that the statement was made by a man in the passenger train of the Columbus, Hocking Valley & Toledo Railroad, upon which the plaintiff was riding; and that it was made subsequent to the accident; *third*, that it was not competent to prove the statement of any brakeman of the Wabash train at any other time, so as to bind the company, it not appearing in evidence, first, that the person was an employee upon the train of the company; second, it not appearing that he had authority to act in the particular matter; third, it not appearing in any way that it was his duty to open the switch; fourth, it not appearing in any way that the duty of opening the switch had been laid upon him as a servant of the defendant company. The plaintiff then testified that the man who came into the car said: "I am the man that caused the accident. I am the man that opened the switch.". The witness further testified

that the person speaking had on a badge marked "brakeman," and he was allowed to testify, against defendant's objection, that he understood, from what was said by the by-standers, that he was a brakeman on defendant's train.

The counsel for defendant requested the court to charge the jury that the alleged declarations of the brakeman do not bind the defendant, and such declarations must be made during the very transaction in order to bind the company at all; which request the court refused. This was error. The statement made by the brakeman, after the accident, as to his own acts as the producing cause, is not competent evidence as an admission to fix liability upon the company. It was no part of the res gestæ, for the reason that such admission was not made while in the execution of his duty, or while the act to which it referred was being performed, and he was not so connected with the corporation defendant as to make his admissions the admissions of defendant. The charge should have been given as requested; and the testimony was also inadmissible, and ought to have been excluded on the objection made.

The evidence received was that a person wearing the badge of a brakeman came into the car where plaintiff was, immediately after the accident, and stated that he was the man that caused the accident; that he was the man that opened the switch. This testimony was received manifestly for the purpose of binding the defendant by an admission made by its agent. It could not be claimed that the testimony was admissible to prove the fact that the brakeman opened the switch. Such testimony would be clearly hearsay, as applied to the proof of such fact; as much so as the declaration of any other person, being an entire stranger to defendant, made in the hearing of the plaintiff. If an agent has knowledge of any material fact, it is to be proved by his testimony, not by his assertion. If the declaration of this person was receivable at all, it must have been because it was an admission made by an agent by which the principal is bound, as an admission made by him. But to be binding upon the principal, as his admission, it must have been made

by an agent having authority to represent the principal in the transaction in which it was made; and if made respecting his acts, two things must concur, at least, in order to bind the principal : the acts must have been authorized or performed in the line of duty of the agent; and the declarations must have formed part of the res gestæ.   The proof received failed to show, 1st, that the person making the statement was an agent of defendant; 2d, that such declaration was made while such person was in the performance of any duty for defendant.   And it is apparent that such declaration was no part of the things done by such person as agent for defendant, so as to constitute a part of the res gestæ.   So far as the record shows, the act of the person making the declaration, and to which he referred, was that of an entire stranger to defendant.   And if it be conceded that the person making the statement was the brakeman for defendant, yet, so far as this record shows, he may have done the act through malice, and entirely outside his duty, and one for which he might be personally liable, but for which defendant was in no manner responsible.

There were numerous other exceptions taken, many of them without merit, and others unnecessary to pass upon here, as they will not be likely to arise upon a re-trial.

For the errors mentioned

The judgment is reversed, and a new trial granted.

The other Justices concurred.