Bissell, J.
Thomas McCluskey died at Aspen on the 7th of April, 1889. At the time of his death he was insured with The Equitable Mutual Accident Association, by a policy which indemnified him against bodily injuries effected through external, violent or accidental means. The present suit was brought by his widow, Margaret A., to recover on the policy, upon the claim that his death was within its scope. The action was contested by the company, tried to a jury, and judgment passed in favor of the widow for the amount of the insurance. It is clear, from this statement, that the *474 principal inquiry was as to the manner of McCluskey’s death. There could be no recovery without proof that he died from, injuries against which the company insured him. Whatever tended to establish that fact would be relevant, and must necessarily be received on trial, unless it ought to be excluded under some established and recognized rule regulating the admission of evidence. Several errors are assigned, but the only one which it is important to consider is that based on the admission of the evidence of the doctor who testified concerning sundry statements made to him by the deceased, shortly prior to his death. The force of the objection which was made to its introduction will become more apparent if it is preceded by what the case discloses of other proof offered on this matter.
There were but two witnesses, other than the physician, who gave testimony concerning the fact that McCluskey was hurt. Forrester seems to have been an engineer on the “ Celeste ” mine, where McCluskey was working. According to his story, he got a signal to hoist from below, and McCluskey came up in the bucket with one Withrow. Mc-Cluskey, was assisted out of the bucket by his companion, and then, unaided, went to the water bucket. Forrester inquired what was.the matter, and McCluskey responded that he was hurt and unable to work. The fact of the injury, so far as Forrester’s testimony goes, is established solely by the declaration which McCluskey then made. There .were no external indications of any hurt, nor was there in his manner, or in the circumstances attending the conversation, anj'thing to show the truth of the statement. During his illness, which lasted from the time he came home on the 2d to the time of his death on the 7th, he was nursed by two of his associates ; one of whom, named Enfield, assisted in preparing him for the funeral. While doing this, Enfield noticed some evidences of a bruise on McCluskey’s back, over the kidneys. He describes the body in that locality as bruised, and as' showing a slight abrasion of the skin. This is all the evidence which tends to show the happening of an accident, or *475 the receipt of an injury which would bring the death within the provisions of the security, other than the evidence of the attending physician Harrison and another doctor, Hills, who gave médical testimony on the subject. They testified that McCluskey died from pneumonia. They gave evidence concerning its different varieties, particularly explaining that sort known as the traumatic. Doctor Hills never examined the patient, and only testified generally .that a sputa tinged with bright red blood mixed with air bubbles was characteristic of that form of the disease. The other physician gave a description of the sputa which he observed. In general it would be said to resemble that which they both agreed would be present in the traumatic form. Their medical deduction was that the pneumonia from which McCluskey suffered, and of which he died, was occasioned by some injury. The attending physician made no examination to determine whether or not his conclusion was correct, nor was it very apparent that he reached this result prior to the time the man died and this suit was instituted. The other doctor, of course, stated that where it was patent the patient was suffering from traumatic pneumonia, he would immediately investigate and determine the character and description of the injury which he had sustained, to aid him in his treatment. From this it is evident that the case was exceedingly weak, both in the manner of proof as to the happening of the accident, and as to any evidence which would satisfactorily establish the fact that McCluskey had died from an injury.
The case was attempted to be strengthened by proof of the declarations which McCluskey made to the physician during his sickness. McCluskey was brought home on the 2d, and Harrison was called to attend him. He found him suffering from lobular pneumonia, and he commenced what he regarded as proper treatment. On the evening of the following, or the third day, when he visited McCluskey, he had a conversation with him in which, according to his story, McCluskey made statements concerning the principal faetthathe had been *476 injured. It will be observed that what'McCluskey said was not in the form of a statement to his physician of his symptoms or bf his trouble, to aid the doctor to make a-proper diagnosis of the case. It can therefore in no sense be brought within the law, as declared in some cases, which admit evidence of the statements of the patient on the hypothesis that they are made when the physician is first called, and that they are probably not made for the purposes of future litigation. In those cases they are received, not as evidence of the principal fact, nor as the declarations of the deceased upon the subject matter of the inquiry, but as a part of the testimony of the physician, and as the basis upon which he formulated the opinion as to which he is testifying. Ill. Ct. R. R. Co. v. Sutton, 42 Ill. 438; State of Vermont v. Davidson, 30 Vt. 377.
Plainly the conversation about which the doctor testifies cannot be brought within the principle announced in these authorities. It led to no examination of the patient. It was not given in evidence as a part of the professional statement of the patient’s condition, nor was it used as a basis for any professional opinion concerning the illness of which Mc-Cluskey died, which was being expressed to the jury. It leaves, then, the single inquiry whether these statements by McCluskey can in any sense be said to be a part of the .res gestee, and therefore under the decisions admissible in evidence. ;
The necessity to observe the rules of evidence, which are the result of the experience of men learned in the law, is manifest to all who are interested as suitors in the conduct of common law litigations. They measure and determine the rights of property and limit and control the inquiries as to the interests of the various parties. The one rule most familiar to the profession and to suitors,' which has never been shaken, and scarcely modified since the birth of common law procedure, is that which excludes from the consideration of either court or jury what is best described as hearsay testimony. In the vigorous and forcible english of Chief Jus *477 tice Marshall, “ one of these rules is, that hearsay evidence is, in its own nature, inadmissible not only because it supposes that better testimony "might be adduced to prove the alleged fact, but on account of its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its color.”
The most dangerous exception ingrafted upon the rule is that which admits the declarations of a party, or an agent, uttered at the time of the principal transaction, and therefore taken to be a part of it, because it is supposed to be illustrative and evidence of the principal fact which is the subject of the inquiry. It probably had its origin in the trouble sometimes experienced in criminal cases to- identify the perpetrator of a crime. The desire of the courts to prevent what would be an evident miscarriage of justice gradually led to the extension of the rule to civil controversies ; and it is possibly as well settled as any of the rules of evidence, that the declaration of a party made at the time of an act which may be given in evidence, if it he calculated to explain, qualify or characterize the act itself, and is so connected with it that it may be taken as a part of one and the same transaction, and is in no sense a narrative of something which has passed, may be proven as a part of the res gestee. Courts have gone a long distance in the application of the rule to particular facts, but, for the purpose of this opinion, it is wholly unnecessary to call in question or criticise the extreme cases, or to attempt the statement of any general principle, or limit its application. It is enough to hold, which is as far as this opinion goes, or is intended to go, that the declarations offered in evidence were not under any of the well considered cases a part of the res gestee.
It will be remembered that in reality there was no direct proof that McCluskey was hurt at. all. The case shows some little medical testimony tending to establish the fact that McClusky died of a pneumonia which was probably traumatic in its character, but imagined to be such because of the character of the sputa accompanying the disease. *478 Thé evidence on this subject was very far from being either satisfactory or conclusive. What happened at the shaft house when he was brought to the surface in no way served to establish the fact of the injury, unless it be taken in connection with his declarations. There was some proof offered of the condition of his back, which perhaps tended to show' that he might have sustained a hurt of some kind, but there was nothing whatever in the case to connect the discoloration observed upon his skin with any accident immediately preceding his sickness, and to which that illness might be attributed, nor any to make known how long it had been there, when it was produced, or under what circumstances. This statement will serve to manifest what importance the jury may have attached to the evidence given by the doctor, and the gravity of the error committed by the court in admitting it when it ought to have been excluded.
McCluskey came home on Wednesday, and Doctor Harrison was called. The doctor proceeded to describe the condition of his lungs. As the doctor puts it, “ he examined his lungs and chest, and thoroughly examined his trunk.” The doctor made no inquiries, nor did the patient then make any' statements concerning the trouble, or its cause. Evidently the physician did not conclude that the disease came from an injury, since he made no examination to discover the truth in respect of this matter. The usual course was taken, the patient was prescribed for and left in the care of nurses until evening of the following day, when the doctor called to learn the condition of his patient. There are some discrepancies in the doctor’s testimony, which would leave the matter in doubt as to the time-when the conversation about to be narrated was had. At one time he puts it on the evening of the second day, and at another on the third day. As the court views the law, it is not important to settle which account is correct. In substance the testimony was that McCluskey said -he had been hurt in the mine; that he was helped down to the boarding-house, and from there to his room. He told the doctor that he was down in *479 Aspen, that he voted and then walked up the mountain to the mine; that he was foreman up there, had charge of a gang of men, and was in the performance of his duty when he received his injury. The man was sick, and on what proved to be his death-bed. A jury would very naturally suppose that these confidential statements to the physician ■would be an uncolored and truthful narration of what had produced his sickness. The objection which was interposed to the introduction of that testimony ought to have been sustained. In this case the act, or the accident, the res gesta, was in the mine, on the hill and out of town. If any accident had occurred, it happened more than forty-eight, certainly more than thirty-six hours prior to the time that „the statement was made to the doctor, and the narration was no part of the thing itself; and it is always true, that when the declarations are merely narratives of past occurrences, they cannot be received in evidence. As was well said in People v. Davis, by Grover, J.: “ the question is, did the proposed declaration accompany the act, or was it so connected therewith as to constitute a part of it ? If so,, it is a part of the res gestee, and competent; otherwise, not.” The same principle was expressed in Tilson v. Terwilliger, by Folger, J., who says : “ to be a part of the res gestee they must be made at the time of the act done, which they are supposed to characterize ; they must be calculated to unfold the nature and quality of the acts which they are intended to explain; they must so harmonize with those facts as to form one transaction. There must be a transaction of winch they are considered a part; they must be concomitant with the principal act, and so connected with it as to be regarded as the result and consequence of co-existing motives.” This law has been laid down in many cases and in many ways, but always with the same general limitations. It is not a matter of discretion with the presiding judge, to determine whether or not the declarations are admissible. That is determinable by well settled principles of law, which must be applied to each case as it arises; the restriction being that the declaration must *480 be contemporary with the principal transaction, and derive some degree of credit from it. Waldele, Admx. etc., v. The N. Y. C. & H. R. R. R. Co., 95 N. Y. 275; Tilson v. Terwilliger, 56 N. Y. 273; People v. Davis, 56 N. Y. 95; Reg. v. Beddingfield, 14 Cox’s C. L. C. 341; Meek et al. v. Perry et al., 36 Miss. 190-260; Merkle v. Township of Bennington, 58 Mich. 156; Patterson v. The Wabash etc. R. R. Co., 54 Mich. 91; Lund et al. v. The Inhabitants of Tyngsborough, 9 Cush. 36; Martin v. The N. Y., N. H. & H. R. R. Co., 103 N. Y. 626.
In no light in which these declarations can be viewed can they be taken as a part of the principal transaction, and. therefore receivable in evidence.
For the error committed by the court in admitting the statements made by McCluskey to his physician, this judgment must be reversed, and the cause remanded for a new trial.

Reversed.