FLORA A. POOLE v. THE CONSOLIDATED STREET RAILWAY COMPANY.

*Street railways—Dangerous premises—Landing place—Contributory negligence—Proximate cause—Instructions to jury.*

1. Where, in a personal injury case against a street-railway company, the plaintiff testifies that the injury complained of was received while she was alighting from one of defendant's cars, by stepping upon a ridge of earth which the defendant had negligently suffered to remain in close proximity to the track, and the defendant contends, and introduces evidence tending to show, that the accident was caused by some one stepping upon the plaintiff's dress as she was in the act of alighting

from the car, thereby throwing her to the ground, it is error to refuse to instruct the jury, at the request of the defendant, that if they find that the contention of the defendant is correct the plaintiff cannot recover, and the error is not cured by a general instruction that if the jury find that the injury was caused by accident or misadventure, without fault of either party, there can be no recovery; citing *Wildey v. Crane,* 69 Mich. 17; *Dikeman v. Arnold,* 71 Id. 656; *O'Callaghan v. Boeing,* 72 Id. 669; *Babbitt v. Bumpus,* 73 Id. 331; *Cooper v. Mulder,* 74 Id. 374; *People v. Jacks,* 76 Id. 218; *Miller v. Miller,* 97 Id. 151.

2. Defendant maintained pleasure grounds at a summer resort near the city in which it operated its road.   For the more convenient carriage of passengers to and from the resort, its double track had been extended and formed into a loop at the resort terminus, and cinders had been spread on the side of the loop next to the resort, so as to form a safe landing place, from which a walk led to the pleasure grounds.   Plaintiff, in attempting, after the car had come to a stop opposite said path, to alight inside the loop, fell and was injured.   She sued the company, claiming that the cause of the accident was its negligence in permitting a ridge of earth to remain at a point where one alighting inside the loop would be likely to step upon its edge, and slip backward, as she testified she did. The defendant insisted that, having provided a safe landing place on the side of the loop nearest the pleasure grounds, its full duty to passengers was performed.   And it is held that under the circumstances of the case, and in view of the testimony of the plaintiff that she had previously been helped off the car by the defendant's conductors inside the loop, and of the common practice of passengers, as established by the testimony, to alight on either side of the cars indiscriminately, said cars being so constructed as to enable them to do so, and of the absence of any warning or notice to passengers to step off only on the side nearest the landing place, it cannot be said, as matter of law, that it was negligent for the plaintiff to attempt to alight inside the loop.

3. An instruction that if the jury should find that the space between the outer edge of the running board of the car and the edge of the sod or little embankment, at the time and place when and where the plaintiff claimed she stepped between the running board and embankment, was not more than 7 or 8 inches in width, the defendant was not guilty of negligence in having such a space at that time and place, and that plaintiff could not recover, was properly refused, it appearing that plaintiff was compelled to step downward in

order to alight, the running board of the car being about 18 inches above the surface of the ground, and the Court not being able to say, as matter of law, that a passenger, in taking such a step, would in all cases step outward more than 7 or 8 inches.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued January 30 and 31, 1894. Decided May 22, 1894.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Kingsley & Kleinhans,* for appellant.

*Wesselius, Corbitt & Ewing,* for plaintiff.

MONTGOMERY, J. The defendant operates an electric street railroad in Grand Rapids, with a line extending to Reed's Lake, which is a summer resort a short distance east of the city. The company maintains pleasure grounds at this place, including a pavilion and conveniences for visitors. During the summer, the travel over this route is very large. For the convenient transaction of its business, the company's double track is extended and formed into a loop at the Reed's Lake terminus, so that cars may run continuously, without reversing or switching, around this loop, and back to the city. Within this loop is vacant ground, and, on the side to the north, nearest the pavilion, cinders have been spread, connecting with the walk and the pavilion, and forming an admittedly safe landing place. The sketch on next page sufficiently shows the surroundings to indicate the situation.

On the evening of the 12th of August, 1892, the plaintiff, who had taken passage on one of defendant's cars, in attempting, after the car came to a stop, to alight inside of the loop, received serious injuries. She brought this suit against the company, alleging that the defendant did

MAP
OF
TERMINAL LOOP
AT
REED'S LAKE.

not keep its grounds at Reed's Lake, at and adjacent to where said cars stopped for passengers to leave the same, in such condition that passengers might alight with safety from said cars by night, but permitted said grounds to be and remain in such a rough, broken, and uneven condition, and permitted a steep bank of earth, of the height of, to wit, six inches, to be and remain at and alongside of said railway at said terminus where said cars stopped for passengers to leave the same, so that passengers alighting from said cars were liable to be thrown down and injured; and alleging that the plaintiff, by reason of the unsafe condition of the grounds, was, without fault on her part, thrown down and caused to fall to the ground with great force and violence, and received the injury complained of. The plaintiff recovered a verdict for $5,000, and defendant brings error.

The defendant contends that upon the whole record it appears that the landing place provided on the northerly side of the track was suitable and proper, and known to the plaintiff to be so, and that she had no right to alight on the side of the car next the loop, and that, if she chose to do so, it was at her own risk; and it is further contended that the plaintiff's testimony, taken as a whole, failed to make it clear how the injury occurred, and also that the grounds inside the loop were a reasonably safe landing place. A number of other questions are raised, relating to rulings on the trial as to the admissibility of testimony, the refusal of requests to charge preferred by counsel for the defendant, and the charge of the court on its own motion, which will be considered in order.

The plaintiff's theory is that in attempting to leave the car she stood with both feet on the running board; that a gentleman who was aboard the car assisted her from the running board to the ground; that she clasped his hand in making her descent to the ground; that, upon stepping

down from the running board, she stepped upon the steep bank of earth, which the testimony shows to be somewhere from four to five inches high; that her foot slipped and gave way, and that she fell, and received the injuries in question. The defendant's theory as to the manner of her injury is that the true cause of her injury was not the uneven condition of the ground, but that it was occasioned by some person stepping upon the plaintiff's dress as she was alighting, thereby throwing her to the ground; and the defendant offered the testimony of numerous witnesses tending to sustain this theory.

It is strenuously insisted that, the company having provided a safe landing place on the northerly side of the loop, its full duty to the passengers was performed, and that it cannot be held liable for an injury occurring by reason of a passenger attempting to alight inside the loop. Upon this question the trial judge charged the jury as follows:

"A street-railway company has a right to select and adhere to the making of their own arrangements for platforms and landing places at such resorts as Reed's Lake, provided, only, that they make a landing place on one side safe and commodious, and so conspicuous that all passengers can easily see it by day or by night, unless it has been so used, and is so used, and the circumstances are such, in connection with the landing, as amounts to an invitation to alight on the other side."

And, further:

"It is certain, under the testimony in this case of the construction of that walk and landing, running from 30 feet wide down to 10 feet each way, to an extent of from 150 to 200 feet long, upon the north side next to the resort, that it offers a plain and palpable invitation for the passengers upon its trains to get off upon that side; and I have no doubt that under the arrangements as testified to, and uncontradicted, in order for the company to be held as inviting an alighting upon the inside of the loop, that there must be, and should be, some positive act upon the

part of the company, as if a conductor should invite a passenger to get off upon that side, or as if any arrangement had been made for the alighting of passengers upon that side; and I believe the law to be that it would be necessary, under the peculiar testimony in this case, that there should be something that you should fix in your minds, other than the fact that passengers upon a loaded train, riding upon the running board, upon the outside, saw fit to jump off within the loop, and run around across the track to the place of amusements."

This charge was sufficiently favorable to the defendant, and fairly stated the law of the case, if there was any testimony tending to show that passengers had been, by the course of conduct of the defendant, invited to alight upon the inside of the loop. See *McDonald v. Railroad Co.*, 26 Iowa, 124; 2 Redf. Amer. Ry. Cas. 532. We also think that there was testimony which justified this instruction. According to the plaintiff's testimony, she had previously been helped off the car by conductors inside the loop, and there is abundant testimony in the record that the common practice was to alight on either side indiscriminately. The car was so constructed that passengers could alight from either side, and there was no warning or notice to passengers to step off only on the northerly side. The cars were crowded with passengers, and the evidence shows that, as some would alight, others would press forward and take their seats. Under these circumstances, we are not prepared to say that, as a matter of law, it was negligent to attempt to alight on the inside the loop.

But it is said that the car had not reached its usual stopping place, nor the place where plaintiff had been previously assisted to alight. But the car had come to a full stop on the occasion in question. There was no warning not to alight, and a glance at the surroundings is sufficient to indicate that a passenger might well have understood

that the stop had been made for that purpose. The evidence shows that not the plaintiff alone, but substantially all, if not all, the passengers, interpreted the stop as an invitation to alight. The cinder walk was opposite the stopping place on the north, and the car was directly opposite the walk which leads to the pavilion.

We also think the question of whether the uneven condition of the ground was such as to amount to negligence on the part of the company was, under the circumstances of this case, fairly a question for the jury. The plaintiff's theory was that the bank of earth from which her foot slipped was directly at the point where one, in alighting from the car, would be likely to step upon its edge, and slip backward. We are not prepared to say, as a matter of law, that this was a suitable landing place.

The defendant asked the court to charge the jury as follows:

"If the jury find that the space between the outer edge of the running board of the car and the edge of the sod or little embankment, at the time and place when and where the plaintiff claims she stepped between the running board and embankment, was not more than seven or eight inches in width, it was not negligence on the part of the defendant to have such a space at that time and place, and the plaintiff cannot recover."

This request was refused, and the defendant's counsel assign error upon its refusal, citing and relying upon the case of *Ryan v. Railway Co.*, 121 N. Y. 126, as sustaining their contention that the request should have been given. That case is not at all analogous to the present. That was the case of an elevated railway company, which had left a space of from seven to eight inches between its platform and the running board of the car. This running board was presumably substantially upon the same level as the platform, and the court held that some space was

necessary between the running board and the platform to enable the company to run its cars, and that, because of a necessary curve in the track, the distance of seven or eight inches was not unreasonable, and that, as it must have been known that there was a vacant space between the car and the platform, such a space as could be spanned by a single step of a passenger was not unreasonable, and the leaving of such a space was not negligence.   But in the present case the passenger was compelled to step downward in order to alight, the running board of the car being about 18 inches above the surface of the earth, and we cannot say, as matter of law, that a passenger, in stepping down from the running board of the car, would in all cases step outward more than seven or eight inches.   There was certainly no necessity for maintaining an obstruction there which could work injury, and the only legal question which could possibly be involved is whether the situation of this mound was such that one, in landing from the car, would reach it, and be likely to be injured by stepping upon the edge of the mound; and that question the request does not submit, and was therefore properly refused.

In the main, the cause was very carefully presented to the jury; but we think the court committed one error which is important, in view of the defendant's testimony, and the theory upon which it contested the case before the jury.   The defendant requested the court to charge the jury as follows:

"If the jury find that the injury was occasioned by some one stepping on the plaintiff's dress as she was alighting, and she was thereby caused to fall, she cannot recover."

This request presented the defendant's theory of the case, and should have been given.   The plaintiff denied any such occurrence, and described in detail how she claimed the injury occurred, while the defendant produced

a number of witnesses who testified that her first statement of the occurrence was that some person stepped upon her dress, and caused her to fall from the car, and also produced three witnesses who witnessed the occurrence, and who gave testimony in the same line. This presented the issue for the jury. There was no middle ground. There was no claim of two concurring causes. There could be no recovery unless the plaintiff's theory of the manner in which the accident occurred was found to be sustained by the proof; and if the testimony offered by the defense, which tended strongly to show that the injury occurred by reason of some person stepping upon her dress, was believed, there was no testimony in the case connecting the cause of the injury with the fault attributed to the defendant in the declaration.

The omission to give this request is not cured by the general instruction that, if the injury was caused by accident or misadventure, without fault of either the plaintiff or defendant, there could be no recovery. The defendant had a right to have its theory of the case covered by specific instructions. *Dikeman v. Arnold,* 71 Mich. 656; *People v. Jacks,* 76 Id. 218; *O'Callaghan v. Boeing,* 72 Id. 669; *Cooper v. Mulder,* 74 Id. 374; *Wildey v. Crane,* 69 Id. 17; *Babbitt v. Bumpus,* 73 Id. 331; *Miller v. Miller,* 97 Id. 151.

The other questions presented are not likely to arise upon a new trial, but, for the error pointed out, the judgment will be reversed, with costs, and a new trial ordered.

McGrath, C. J., Long and Grant, JJ., concurred. Hooker, J., did not sit.