RICHARD *v.* DETROIT, ROCHESTER, ROMEO & LAKE ORION
RAILWAY.

1. ELECTRIC RAILWAYS — INJURY TO PASSENGER — NEGLIGENCE —
   QUESTION FOR JURY.
   > Plaintiff was injured while attempting to alight from an elec-
   > tric car at a switch several rods from the station building at
   > her destination. Her testimony tended to show that the con-
   > ductor called the name of the station before the car stopped;
   > that several persons then boarded the car; that passengers
   > were in the habit of leaving the car at that place, and there
   > was nothing to indicate that it was not proper to do so; and
   > that she attempted to alight in a proper manner, and was
   > thrown to the ground by the sudden starting of the car. De-
   > fendant's testimony contradicted that of plaintiff in all essen-
   > tial particulars. *Held*, that a verdict for plaintiff would not
   > be disturbed.

2. SAME—CONNECTING LINES—TRACK CONTRACTS—JOINT LIABILITY.
   > Defendant operated an electric railway connecting with an-
   > other line, and had a contract with the latter whereby through
   > cars were run by both lines between their respective termi-
   > nals. The contract provided that each company should have
   > full control of the cars while on its tracks, and that the own-
   > ership of the tracks should determine their responsibility to the
   > public; that each company should receive a rental for the use
   > of its cars by the other; and that the fares should belong to
   > the company owning the tracks for a ride over which they
   > were collected. Plaintiff boarded one of defendant's cars
   > while on the tracks of the other company, and paid her fare
   > to the terminus of the latter's line. She was injured, while
   > alighting, by the negligent starting of the car as it was about
   > to turn onto defendant's track, and after the switch had been
   > thrown. She was entitled, for the fare paid, to ride at least
   > a block farther, and over a portion of defendant's road. *Held*,
   > that the companies were jointly operating the car, each re-
   > ceiving a consideration for her ride,—the other company, the
   > fare; defendant, a rental for its car, with the privilege of
   > through service,—and were jointly liable for the injury.

3. NEGLIGENCE—JOINT TORT FEASORS—ACTIONS.
   > Where more than one party is guilty of negligence, the person
   > injured may proceed against them jointly or severally

Error to Oakland; Smith, J.   Submitted January 29, 1902.   Decided February 11, 1902.

Case by Elizabeth Richard against the Detroit, Rochester, Romeo & Lake Orion Railway for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

A - SWITCH WHERE ACCIDENT HAPPENED.
B - SWITCH AND STOPPING PLACE FOR SOUTH-BOUND CAR.

*Graves & Hatch*, for appellant.

*Baldwin, Jacokes & Moore*, for appellee.

MOORE, J. The plaintiff recovered a judgment against the Detroit, Rochester, Romeo & Lake Orion Railway for personal injuries sustained by her by reason, as she claims, of her being thrown from one of the defendant's cars because of the negligent starting of the same when she was alighting therefrom at the village of Royal Oak. The annexed plat will aid in understanding the situation.

The Detroit & Pontiac Railway owns and operates an electric railway running from Detroit through Royal Oak and other intermediate places to Pontiac. The Detroit, Rochester, Romeo & Lake Orion Railway, the defendant, owns and operates an electric railway connecting with the Detroit & Pontiac Railway at Royal Oak, and running therefrom north and east to Rochester, Oxford, Orion, and branching to Romeo, in Macomb county. A working arrangement was entered into between the two companies. This arrangement was in writing. The pertinent portions read as follows:

"2. So soon as the Rochester Company has completed its railway and desires to commence operation, cars shall be run through by both companies jointly, and under the contract between the Pontiac Company and the Detroit Citizens' Street-Railway Company, from the Campus Martius, in the city of Detroit, to the village of Rochester, in the county of Oakland, and such other terminals as the Rochester Company may have, or may from time to time acquire.   *   *   *

"4. Each company shall remain in full control of the operation and management of the cars while on the tracks, and the ownership of the tracks shall determine the responsibility of the respective parties to the general public. Each party shall have the right to replace the employés of the other at the junction point, so that its own employés may operate the cars while on its own tracks.

"5. Each company shall pay to the other, for the use of double-truck passenger cars, two cents (2 cts.) per car mile; and the Pontiac Company shall pay to the Rochester Company all moneys collected from the Detroit Citi-

zens' Street-Railway Company for the use of Rochester Company's cars on Detroit Citizens' Street-Railway Company's tracks.

"6. The fares shall belong to the company owning the tracks for a ride over which they are collected. Each company shall have the right to issue through tickets carrying coupons for collection by the conductors of the parties hereto and the Detroit Citizens' Street-Railway Company; and an accounting thereof shall be made monthly, before the fifth day of each month, and the debtor at said ' accounting shall pay the balance against it to the creditor within five days thereafter.   *   *   * "

September 21, 1900, the plaintiff got upon one of the cars of the defendant in Detroit, and, after leaving the city limits, she paid her fare to Royal Oak. It is her claim that, just before reaching the point marked "A" on the plat, the conductor came through the car and called, "Royal Oak;" that soon thereafter the car stopped, and, after waiting for a number of passengers to get on, she attempted to alight, and while doing so the car started, as the result of which she was injured. It was also her claim that passengers were in the habit of alighting at this point. The conductor denied that he called, "Royal Oak," and that passengers were in the habit of getting on and off at this point, and it is the claim of defendant it was not a proper place for passengers to alight. The record shows that south-bound cars did not stop at the station, but stopped at the point marked "B" upon the plat.

Special findings of fact were submitted to the jury, which, with the answers, were as follows:

"1. Was the plaintiff guilty of negligence in attempting to alight at the place and in the manner which she did?

"Which said question was answered by the jury in the negative.

"2. Was the conductor negligent in signaling the car ahead in the manner in which he testified he did?

"Which said question was answered by the jury in the affirmative.

"3. Was the switch-stop a point where passengers were accustomed to alight from defendant's cars?

" Which said question was answered by the jury in the affirmative.

" 4. Did the conductor call out, ' Royal Oak,' before making the switch-stop ?

" Which said question was answered by the jury in the affirmative.

" 5. Was the plaintiff thrown to the ground and injured by the starting of the car ?

" Which said question was answered by the jury in the affirmative."

Counsel for defendant say, while they think the court erred on various questions upon the trial, they do not desire the case reversed unless the court erred in relation to two fundamental questions:  *First*, was there negligence on the part of the conductor or motorman, and was the plaintiff guilty of contributory negligence ?  And, *second*, is it the Rochester Company or the Pontiac Company that is liable to the plaintiff, granting that either is liable ?

As to the first of these questions the testimony was very conflicting.  That offered upon the part of the plaintiff tended to show the conductor did call out, " Royal Oak;" that, soon after, the car stopped; that passengers who were waiting got upon the car; that there was nothing in the character or appearance of the place which should indicate to plaintiff that it was not a proper place for her to alight; that she attempted to alight in a proper manner, and that she was without fault; and that passengers were in the habit of leaving the car at 'that place.  The jury, in reply to the special questions, have found in favor of the claim of the plaintiff, and, as there was testimony upon which to base their findings, we are not at liberty to disturb them.  *Detroit, etc., R. Co.* v. *Van Steinburg,* 17 Mich. 99; *Teipel* v. *Hilsendegen,* 44 Mich. 461 (7 N. W. 82); *Marcott* v. *Railroad Co.,* 47 Mich. 1 (10 N. W. 53); *Sheldon* v. *Railroad Co.,* 59 Mich. 172 (26 N. W. 507); *Gibbons* v. *Farwell,* 63 Mich. 348 (29 N. W. 855, 6 Am. St. Rep. 301); *Poole* v. *Railway Co.,* 100 Mich. 379 (59 N. W. 390, 25 L. R. A. 744).

As to the second question the court charged the jury:

" The accident in question happened at a point near the switch connecting the defendant's line with the line of the Detroit & Pontiac Railroad Company's lines, and after the switch had been turned, and the car was moving towards the defendant's line of track; and even though you find the defendant company operated its cars from Detroit to Royal Oak over the Detroit & Pontiac line by virtue of a private agreement, still, if the accident resulted from the negligence of the servants and employés of the defendant company while in charge of the car, and without any contributory negligence on the part of the plaintiff, then the defendant would be liable, and the plaintiff entitled to recover."

It is the claim of defendant that plaintiff was hurt south of the switch, while the car was on the track of the Pontiac Railway Company, and while the conductor and motorman were under the control of the superintendent of the Pontiac Railway Company; and, while these employés were primarily paid by the defendant company, it was reimbursed by the Pontiac Railway Company, and, if there is any liability at all, it is the Pontiac Railway Company which is liable, and not the defendant company. The record discloses that, upon the fare paid by her, the plaintiff would have been entitled to ride at least a block farther than where she got off, and over a portion of defendant's road. It also shows the conductor had thrown the switch belonging to the defendant company before the car was started. Whatever may be said of this contract between the parties thereto, it is very clear that it was to the mutual advantage of both the companies to have the cars of the defendant company pass over the track of the Pontiac Railway Company, and to have passengers ride in the cars of the defendant company. The fare which plaintiff paid entitled her to a ride over the tracks of both companies, and, according to the contract, each company was receiving a good and valid consideration for her ride. One received a five-cent fare; the other received a rental for its cars, the privilege of through car service, and all the benefits which such service brought, by giving the defend-

ant company a Detroit terminal. Then, under the most favorable construction which could be given to the contract, the defendant company and the Detroit & Pontiac Company were jointly operating the car on the night in question, and were jointly and severally liable for any tort which may have been committed by their servants. And it is a well-settled principle of law that, where more than one party is guilty of a negligent act, the party injured may proceed against them jointly or severally. *Patterson* v. *Railway Co.*, 54 Mich. 91 (19 N. W. 761); *Roddy* v. *Railway Co.*, 104 Mo. 234 (15 S. W. 1112, 12 L. R. A. 746, 24 Am. St. Rep. 333); *Keep* v. *Railroad Co.*, 10 Fed. 454. See, also, *McMillan* v. *Railroad Co.*, 16 Mich. 79 (93 Am. Dec. 208); *Eureka Springs Railway* v. *Timmons*, 51 Ark. 459 (11 S. W. 690, 40 Am. & Eng. R. Cas. 698); *Illinois Central R. Co.* v. *Kanouse*, 39 Ill. 272 (89 Am. Dec. 307).

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.