## Nelson W. Clark v. Thomas McGraw.

*Admissibility of testimony.* Two witnesses having testified to conversations with the defendant, in which, as they stated, he authorized and requested one of them to procure the loan of a sum of money from the plaintiff, and the alleged fact of such loan being in issue in the cause, a third witness was offered to testify to a conversation between himself and the defendant, about the same time, as to whether he could procure such a loan of the plaintiff, in the same contingency mentioned by the other witnesses. *Held,* that this testimony of the third witness was admissible, as it related to the same transaction testified to by the other witnesses, and tended to show the defendant's intention to apply to the plaintiff for a loan, in the contingency specified by all three of the witnesses.

*Charge of the Court.* The Court cannot charge the jury to find in a particular manner, if there is any evidence tending to prove the contrary. There being testimony to the effect that the plaintiff did loan money to the defendant through a third party, and that the defendant, after forbidding this party to pay it over in the contemplated

CLARK *v.* McGRAW.

transaction, until a certain thing was done, did authorize said party to act according to the advice of certain counsel; that he did on the advice of said counsel pay over the money; and that, after the transaction, defendant said he supposed said third party had done the best he could. *Held*, that the Court could not charge the jury that there was no loan from plaintiff to defendant, and that the evidence was properly left to the jury.

*Agent. Letter of credit. Loan.* A. employs B. to procure for him a loan from C.; B. procures the assent of C. to the loan, and through him a letter of credit from C.'s bankers, authorizing him (B.) to draw for the amount, he preferring this to taking the money. *Held*, that, as between A. (the borrower) and C. (the lender), B. must be considered the agent of A. in procuring the loan, and the letter of credit as only the mode or machinery for effecting it. An authority granted by C. at the request and for the benefit of A., and to be exercised at his risk, and a check having been drawn by B. and the money obtained, the legal effect of the whole transaction was the same as if C. had delivered his own check or the money directly to A.

There being evidence tending to prove such facts, it could not be withdrawn from the jury, nor could the jury be instructed that there was no loan.

*Error not affecting verdict.* If the Court erroneously charge the jury, adversely to the prevailing party, such error not having worked him any injury, or affected the verdict, it is not a ground for interference with the judgment in this Court.

*Heard January 5th.        Decided April 4th.*

Error to Wayne Circuit.

The defendant in error sued the plaintiff in error, in the Court below, in assumpsit, to recover the sum of $4,000, which he claimed to have loaned him. On the trial, the plaintiff below recovered a verdict for $4,159 44, being the sum claimed, with interest.

Upon the trial in the Circuit Court, on behalf of the plaintiff, (defendant in error,) witnesses were called, and testimony given by them as follows:—

*Jesse Saxton,* upon direct examination, gave evidence tending to show,

That early in the month of February, 1865, he, together with one William Cuthbert, entered into a contract with one Rutlidge, for the purchase of a lot of forty acres of land in the county of St. Clair, supposed to be "oil land," and, by the terms of said contract, were to pay five thousand dollars therefor to Rutlidge, at Port Huron, on the first day of March then next.

That prior to said first of March witness and Cuthbert had agreed to sell to defendant, and said defendant had agreed to purchase, an undivided one-half of said land, for the sum of

five thousand dollars, which, by said agreement, defendant was to pay to Saxton and Cuthbert, so that they might have the same to meet their payment to Rutlidge.

That towards evening, on the twenty-eighth day of February, the defendant, who had been for some days prior absent from said city called upon Saxton and Cuthbert, at the store of one George Moe, and informed them that, on account of the absence from the city of one Mansfield, to whom he had sold a portion of his one-half of said land, and other land, for four thousand dollars, he had not then the money to pay the whole five thousand dollars, and requested Saxton to apply to the plaintiff to borrow for him, (said defendant,) four thousand dollars towards the five thousand dollars; that thereupon he, (Saxton,) went to the office of the plaintiff to apply for such loan.

The witness was here asked to state the conversation between him and the plaintiff on that occasion in regard to such loan.

The defendant, by his counsel, objected to this witness stating a conversation between himself and the plaintiff in the absence of the defendant. The Court overruled the objection, and the defendant's counsel excepted.

The witness then stated said conversation as follows, to wit: "I told the plaintiff that the defendant had been disappointed in getting four thousand dollars of the five thousand dollars, and that he wanted to get it of him for a few days, or until Mansfield returned. Plaintiff demurred somewhat to loaning the money, saying he had it, but did not know at what moment he might want to use it. I told him I thought the defendant could get it at any time, if he wanted it; that he was reputed rich. I also told him that defendant said he might not want to use the money, as he thought he might use Mansfield's bond, or might get Rutlidge to wait till he came to look at his, (defendant's,) farm. I said something about not wanting to carry this money to Port Huron, and plaintiff told me I could call on Mr. Morton, cashier of the Farmers'

and Mechanics' Bank, where plaintiff kept his account, and obtain a letter of credit."

Witness then gave further testimony, tending to show that he returned to Moe's store and informed defendant that plaintiff would let him have the money. That defendant then gave witness a check of a third party for one thousand dollars, the residue of said five thousand dollars. That witness and Cuthbert were going to Port Huron the next morning to meet Rutlidge, pay the five thousand dollars, and obtain a deed of the land. And that it was then arranged that the defendant should start with them, go to St. Clair, examine as to the title of said land, and meet witness and Cuthbert at Port Huron. That the next morning, to wit, March 1st, witness called at the Farmers' and Mechanics' Bank, and obtained a letter of credit, which letter was in substance that said plaintiff's check on said Bank for any amount was good, and that witness was authorized to draw such check. That witness met Cuthbert and defendant at the depot, and with them took the cars, and witness and Cuthbert went to Port Huron, and defendant to St. Clair, to examine the title of said land as arranged.

That witness and Cuthbert met Rutlidge, and had a deed of said land prepared and executed by Rutlidge and wife to witness, Mrs. Cuthbert, wife of said Cuthbert, defendant, and James P. Mansfield, to whom defendant had agreed to sell a one-quarter interest therein, which deed was dated March 1st, 1865, and purported to vest the title of said lands in the grantees therein, as tenants in common, in equal proportions. That on the 2nd day of March defendant came to Port Huron, examined said deed, and made no objection to its form; but did object to the title of the land, as he had found that it had been sold for taxes. But that, after some discussion, defendant told Rutlidge, who was going the next morning to St. Clair, the county seat, to procure a full abstract of the title of said premises, and have said deed recorded, and upon his return to Port Huron with it recorded, the money should be paid over to him.

That after Rutlidge's departure the next morning, March 3d, for St. Clair, defendant expressed his intention to return to Detroit, remarking that witness could remain and close the matter up with Rutlidge on his return from St. Clair. And he, (defendant,) then directed witness not to pay over the money until the tax titles upon the land were removed. Witness not being familiar with land titles, desired the defendant to remain until Rutlidge's return. He declined to do so, but went with witness to the office of O. D. Conger, Esq., a lawyer, and consulted with him as to the right under the contract between Rutlidge and Cuthbert to insist upon a clear title. That Rutlidge returned before defendant left, and met defendant and witness in the street, and produced to them the deed recorded, and a full abstract of the title to said land, by which abstract it appeared that the land had been twice sold for taxes. The defendant then informed Rutlidge that the money would not be paid over to him until such tax titles were cleared off, and some sharp words passed between them, when Rutlidge left to consult his attorney, Mr. Farrand, and defendant to take the cars for Detroit. That before leaving, defendant again requested witness not to pay over the money until said tax titles were cleared off; but that, if any difficulty arose, to consult said Conger, and follow his advice. That after defendant had left, witness went to the office of Mr. Farrand, where he met Rutlidge.

Plaintiff's counsel then asked the witness what took place at Farrand's office between Rutlidge and himself.

Defendant, by his counsel, objected to said question as incompetent; the Court overruled the objection, and defendant excepted.

The witness then answered: "Rutlidge then told Farrand that he had put his deed on record at defendant's request, and Farrand said that was an acceptance of the deed. We had quite a discussion, and I finally told them I would leave it to Conger, and whatever he said I would do. We then went together to Conger's office, and submitted the matter to

him, and he decided that the deed having been placed upon record at defendant's request, Rutlidge was entitled to the money without removing the tax titles. We then went to the banking house of Miller & Co., at Port Huron. I produced the letter of credit, drew a check in plaintiff's name for four thousand dollars on the Farmers' and Mechanics' Bank of Detroit, obtained the money on it, and paid the five thousand dollars."

Plaintiff's counsel then asked the following question:

"In pursuance of what arrangement did you draw the check for $4000?"

Defendant's counsel objected to the question as incompetent. The objection was overruled and defendant excepted.

The witness then answered: "It was under the arrangements made with the plaintiff when I went to see him for defendant."

Said witness gave further testimony tending to show that upon his return to Detroit, on the fourth day of March, he related to defendant at the office of plaintiff, what had transpired between witness and Rutlidge, at Port Huron, after the defendant left for home, and the circumstances under which the money was paid over to Rutlidge, and that defendant remarked in reply that the money ought not to have been paid over until the tax titles were removed, but he supposed the witness had done the best he could. That the witness then offered to assume the purchase himself, and release defendant, to which defendant declined to assent.

On cross-examination the witness testified, amongst other things, that on the said 28th day of February he was clerk and bookkeeper for plaintiff, and had been for several years, and so continued for some time thereafter, and was in the habit of drawing checks in the name of said plaintiff.

The plaintiff's counsel then offered in evidence the deed executed by Rutlidge and wife to Mrs. Cuthbert, witness, defendant, and Mansfield.

The defendant's counsel objected. The Court overruled

CLARK v. McGRAW.

the objection, defendant's counsel excepted, and the deed was read in evidence.

*William Cuthbert* was then called for the plaintiff, and gave evidence tending to show the same facts testified to by Saxton relative to the making of said agreement between Rutlidge, Cuthbert, and Saxton, for the sale and purchase of said land; the agreement between Cuthbert and defendant for the purchase by defendant of an undivided half of said land; the request by defendant to Saxton to apply on his (defendant's) behalf to the plaintiff to loan him $4000; the going to Port Huron, the execution of said deed by Rutlidge and wife, and its examination and approval as to form by defendant; and that witness left Port Huron for Detroit on the evening of the second of March, leaving the defendant and Saxton there.

The witness further testified that some days prior to the 28th day of February he had a conversation with defendant relative to his getting money of plaintiff.

And the witness was then asked by plaintiff's counsel to state said conversation.

Defendant, by his counsel, objected to the same as incompetent and irrelevant.

The Court overruled the objection and defendant excepted.

The witness then answered as follows: "After we (witness and Saxton) sold to defendant, I proposed to go to Port Huron and settle the matter right off. But defendant could not furnish the money because Mansfield was not here to get it from him. One or two days before the time was up, he (defendant) went to Clarkston, and before he went he asked me if I thought he could ge  the money from plaintiff, if Mansfield did not get home in time to go to Port Huron with the money. I told him that I thought he could, and I think he said he would see."

*Thomas McGraw*, the plaintiff, testified that an application was made to him on the evening of said 28th day of February, by Saxton, to loan defendant $4000, and that witness con-

14 MICH.—S.

sented to loan the same, and authorized Saxton to procure a letter of credit, as testified by Saxton.

The plaintiff also testified to the conversation between Saxton and defendant, in the office of plaintiff, in which Saxton informed defendant about paying over the money to Rutlidge after he, (defendant,) left Port Huron, substantially as said conversation was testified to by Saxton. And also that afterwards the defendant, when requested to pay said money, denied that he had ever borrowed any money of the plaintiff.

*John Rutlidge* gave evidence tending to show the execution of the deed by him, as testified by Saxton; that the defendant objected to the title because the land had been sold for taxes, but directed witness to go to St. Clair, procure a complete abstract of title, have the deed put upon record, and said that upon his (witness') return to Port Huron he should be paid his money. The witness did accordingly go to St. Clair, procured the abstract, and had said deed recorded. That on his return to Port Huron, he met Saxton, and had interviews with him at the offices of Farrand and Conger, substantially as stated by Saxton in his testimony, and that after said interviews said $5,000 was paid over to him by Saxton.

Thereupon the plaintiff rested.

*Nelson W. Clark*, the defendant, being sworn in his own behalf, gave testimony tending to show:—

That he never requested Saxton to apply on his behalf to the plaintiff to loan him $4,000, or any other sum, and that he did not borrow said money of plaintiff. That he was not informed by Saxton, and did not know until after the commencement of this suit of the existence of the letter of credit referred to by Saxton in his testimony. That he requested and instructed Saxton not to pay over the money to Rutlidge until the tax titles were cleared off. That he never requested Rutlidge to put said deed upon record, nor did he promise that the money should be paid over to him, except and until said tax titles should be cleared off. That he did not direct

Saxton to consult O. D. Conger, and follow his advice as to paying over the money to Rutlidge. And that he did not afterwards ratify the act of Saxton in paying over the same.

The defendant having rested, the plaintiff called *George Moe*, who testified, in substance, that on said 28th day of February, he heard the defendant request Saxton to go to the plaintiff's office and see if he would loan him that money.

The plaintiff again rested his case, and thereupon the defendant, by his counsel, requested the Court to instruct the jury as follows, to wit:

*First.* That unless the jury find, from the evidence, that the defendant authorized said Saxton to borrow the money, for the recovery of which this action is brought, of the plaintiff in his, (the defendant's,) name, and on his behalf, the plaintiff cannot recover.

*Second.* That, under the testimony, the loan, if ever made, was made at Port Huron, and not at Detroit; and that Saxton was the agent of plaintiff in making such loan.

*Third.* And if the money was paid over to Rutlidge by Saxton without the assent of defendant, it was not a loan by plaintiff to defendant.

The Court gave said instructions marked " First " and " Second," as requested; but refused to give said instruction marked " Third," and did instruct the jury as follows, to wit:

That if, when the money was obtained of plaintiff, Saxton was acting as agent of the defendant for the purpose of obtaining it, and had authority to obtain it, a misappropriation of the money afterwards, without any direction or authority of plaintiff, if there was a misappropriation, would not affect the plaintiff's right to recover.

And the defendant did then and there except to said refusal to give said instruction marked " Third," and also to the giving the last above mentioned instruction.

The following points were made by the plaintiff in error in this Court:

*First.* The said Circuit Court wrongfully permitted the

witness Saxton to testify to a conversation between himself and said defendant in error, in the absence of said plaintiff in error.

*Second.* The said Court wrongfully permitted said witness to answer the following question: Ques.—"What took place at Farrand's office between Rutlidge and yourself?"

*Third.* The said Court wrongfully permitted the said witness to answer the following question, to wit: Ques.—"In pursuance of what arrangement did you draw the check for $4,000?"

*Fourth.* The said Court wrongfully permitted said deed from Rutlidge and wife to Mrs. Cuthbert and others to be received in evidence.

*Fifth.* The said Court wrongfully permitted the witness Cuthbert to testify to said alleged conversation between himself and said plaintiff in error.

*Sixth.* That the said Court wrongfully refused to instruct the jury as follows, to wit: "If the money was paid over to Rutlidge by Saxton without the assent of defendant, it was not a loan by plaintiff to defendant."

*Seventh.* The said Court wrongfully instructed the jury as follows, to wit: "That if, when the money was obtained of plaintiff, Saxton was acting as agent of the defendant for the purpose of obtaining it, and had authority to obtain it, a misappropriation of the money afterwards without any direction or authority of plaintiff, if there was a misappropriation, would not affect the plaintiff's right to recover."

*Newberry & Pond,* for plaintiff in error.

*D. C. Holbrook,* for defendant in error.

CHRISTIANCY J.

McGraw, the plaintiff below, recovered a judgment against Clark in an action of assumpsit for four thousand dollars and interest, which he claimed to have lent to Clark. Seven errors are assigned in this Court. No plausible ground being

shown by the counsel for plaintiff in error, either in their brief or upon the argument, for the first, second, third, fourth or seventh assignments of error, and not having ourselves been able to discover any, we do not deem it necessary to notice them further.

The fifth assignment of error is based upon the admission of Cuthbert's testimony, giving the conversation between himself and Clark, a few days before the money was obtained, in which Clark asked him if he thought he could get the money ($4000) of the plaintiff, if Mansfield did not get home in time to go to Port Huron with the money; and being answered by the witness that he thought he could, replied that he would see.

The question here presented is not upon the necessity of the evidence, nor upon its introduction at a particular stage of the case, nor whether, as independent evidence, it would alone have been sufficient to establish the loan; but whether, in connection with the other evidence in the cause, it was *admissible.* This conversation related to the same transaction between the witness and Saxton of the one part, and Clark of the other, to which both the former had already testified, and which had created the necessity on the part of Clark to raise this sum of money. The conversation tended to show Clark's intention, in case Mansfield did not come in time, to apply to the plaintiff for the same loan which the testimony of the witness and Saxton, already given, tended to show he did apply for, through Saxton, a few days after, when it was known that Mansfield had not come in time. It therefore tended to show the understanding and intention of Clark, in the subsequent transaction with the plaintiff, and to corroborate the version of that transaction given by Saxton and the witness, and thus, in some degree, to prove that transaction a loan. In this view we see no reason to doubt its admissibility.

The sixth, and only remaining, error assigned which we deem it necessary to notice, is the refusal of the Court to

charge that, "if the money was paid over to Rutlidge by Saxton, without the assent of defendant, it was not a loan by plaintiff to defendant."

This request must be understood as having reference to the paying over the money under the circumstances disclosed by the evidence, and to all the evidence in the cause bearing upon Saxton's agency, and the question of a loan; and the charge requested would have been clearly erroneous, if there was any legal evidence in the cause tending to show that it was a loan from the plaintiff to defendant, though it might have been paid over to Rutlidge without the defendant's assent, since it was for the jury and not for the Court to weigh such evidence. If this request can be sustained at all, it can only be upon the hypothesis assumed by the defendant's counsel in their previous request, that Saxton was, as between the plaintiff and defendant, acting as the agent of the plaintiff in making the loan and paying over the money. We have been unable to discover in this record any evidence tending to sustain this hypothesis. Whether, as between McGraw and the bank, or between him and Saxton, in the mere manual operation of drawing the check, Saxton might, or might not be considered for certain purposes as the agent of McGraw, we are not concerned to inquire. As between McGraw and Clark, all the testimony bearing upon the question tended to show that Saxton was acting as the agent of Clark, from the time of the application to McGraw for the loan, until the amount was paid over to Rutlidge; and the testimony of Clark does not tend to show that, as between them, Saxton was acting as the agent of McGraw in any part of the transaction.

The letter of credit taken by Saxton, and the check he drew upon the bank in the name of McGraw, were but the mode or machinery, adopted for convenience, and as a substitute for the manual delivery of the money, and its transmission to Port Huron. And this mode, as the testimony tends to show, was adopted at the option and for the convenience of

Saxton, who did not wish to carry the amount in the shape of money. Saxton being in this matter the agent of Clark, this mode of effecting the loan must be considered as adopted at Clark's request and for his benefit. The power of Saxton therefore to draw the check must be treated as a power obtained at the request and for the benefit of Clark, and as between him and the plaintiff, in legal effect, the same as if given to himself. And though, if Saxton after arriving at Port Huron had refused to draw the check, there might have been no loan, the plaintiff not having parted with the money, yet this would have equally been the case, had the power been given to Clark and he had failed to draw it. And when the check was drawn and delivered by Saxton, the loan was complete, whether appropriated by him, according to Clark's wishes, or not. In legal effect the transaction consummated, (as the evidence tended to show,) by the letter of credit and the check was, as between the parties to this suit, the same as if McGraw had delivered to Saxton, or to Clark himself, his own check or the money, and Saxton or Clark had taken this with him to Port Huron, instead of the letter of credit; and McGraw could be no more responsible for the proper application of the money by Saxton in the one case than in the other.

The Circuit Court, we think, erred in charging the jury according to the second request of the defendant below, "that under the testimony the loan, if ever made, was made at Port Huron, and not at Detroit, and that Saxton was the agent of the plaintiff in making the loan." Unless the Court meant to make a distinction between the acts of Saxton in *making* and in *obtaining* the loan, this charge was inconsistent with that which he afterwards correctly gave in answer to the request we have been considering; and if he intended to make such a distinction, and to say that, as between other parties than the plaintiff and defendant, Saxton was to be considered as the agent of the plaintiff, it was a point which did not arise in the cause, and the charge upon

this point was calculated to confuse the minds of the jury. But this error was corrected by the subsequent portion of the charge and the verdict, and was one of which the defendant could not and does not complain.

There is no error in the record affecting the validity of the judgment, and it must be affirmed, with costs.

CAMPBELL and COOLEY JJ. concurred.

MARTIN CH. J. did not sit in this case.