ELIAS D. SHELDON, ADMINISTRATOR OF THE ESTATE OF DALLAS SHELDON, DECEASED, v. THE FLINT & PERE MARQUETTE RAILROAD COMPANY.

*Directing verdict for defendant—Plaintiff's testimony as to negligence of defendant, to be taken as true—Sufficiency of same is for the jury.*

1. "The only question requiring consideration in this case is, does the record disclose any evidence tending to show actionable negligence on the part of the defendant which caused the death of plaintiff's son. If it does, then the case should have been submitted to the jury, and in determining whether such is the tendency of the evidence, the testimony given upon that subject on the part of the plaintiff, must be taken as true. Such has long been the settled doctrine in this State."

2. The facts and circumstances thus established in this case, as detailed in the following opinion, tended to establish the negligence complained of, and the testimony should have been submitted to the jury, who are the sole judges of its sufficiency.

Error to Wayne. (Jennison, J.) Argued November 6, 1885. Decided January 20, 1886. Judgment for defendant. Plaintiff brings error. Reversed.

Action on the case for negligent killing of plaintiff's son by defendant. The facts are sufficiently stated in the opinion.

*Ervin Palmer* and *Cheever & Underwood* for appellant:

*Wisner & Draper, H. M. Campbell*, and *Wm. L. Webber*, for defendants.

Sherwood, J. Dallas Sheldon, a boy about ten years of age, was run over and killed at Wayne Junction, on the twenty-first day of July, 1883, by one of defendant's trains, and the plaintiff, his father and administrator, brings this action to recover damages by reason of the killing of his son.

The accident occurred in front of the station-house, where a band of music was standing and playing, and which had caused to assemble quite a large crowd of people to hear the music, among whom was the young lad injured by the train. The crowd was composed mostly of an excursion party, who had just left the Michigan Central road, having the band of music with them, and were awaiting the arrival of the defendant's train to take them to Saginaw. The train for Saginaw was made up at this junction, and was composed of coaches coming in from Detroit and Toledo. The train came in from Toledo, and backed down upon the " Y " some fifty or sixty rods west of the depot. The depot building is eighty-five feet long east and west, the west end being about thirty feet from the track, and the east end about eight feet therefrom, and the space intermediate was planked. When the train on the Central road arrived from Detroit, that part which was to go to Saginaw was

left on the main track east of the depot, and with which the "Y" connected. When the defendant was ready to make up the train for Saginaw, defendant's conductors (who stood upon the north side of the "Y," and in plain sight of the people upon the platform in front of the depot) signaled the engineer, who stood with his engine and that part of the train which had come from Toledo, to back down upon the "Y" and couple on the cars left on the main track. The engineer in doing so passed through and by the people standing in front of the depot, and when the cars had nearly reached the east end of the depot, the boy was struck by the passing cars, and instantly killed. While the cars were moving the band was playing, and the testimony tended to show that the train was backed up at the rate of from four to six miles per hour. The plaintiff claims that the defendant was negligent in the manner and conduct of moving the backing train, and that the death of the child was caused by such negligence, and without his fault. The cause was tried in the Wayne circuit court. The acts of negligence counted on were: (1) Negligently backing its train by and through a crowd of men, women and children, at a high rate of speed; (2) neglecting to ring the bell or sound the whistle on the engine of this backing train; (3) neglecting to place a man on the rear platform of the backing train, or on the ground to go in front of it, to warn people off the track; (4) negligence in allowing a band to play on the platform of the depot while the train was backing past the platform and through the crowd; (5) negligence in not using extra care to prevent said backing train from doing injury to the people. At the close of the trial the circuit judge directed a verdict for the defendant, and the plaintiff brings error.

We have the substance of all the testimony before us. There is but one question needing consideration in this case, and that is, does the record disclose any evidence tending to show actionable negligence on the part of the defendant which caused the death of the boy? If it does, then the case should have been submitted to the jury; and, in determining whether such is the tendency of the evidence, the

testimony given upon that subject on the part of the plaintiff must be taken as true. Such has long been the settled doctrine in this State: *Clark v. McGraw*, 14 Mich. 139; *Strong v. Saunders*, 15 Mich. 339; *Perrott v. Shearer*, 17 Mich. 47; *Dubois v. Campau*, 24 Mich. 364; *Hayes v. Homer*, 36 Mich. 374; *Blackwood v. Brown*, 32 Mich. 104; *Conely v. McDonald*, 40 Mich. 150; *Marcott v. Marquette, H. & O. R. Co.*, 47 Mich. 1; *Guggenheim v. L. S. & M. S. Ry. Co.*, 57 Mich. 488; *Klanowski v. Grand Trunk Ry.*, 57 Mich. 525; *Hassenyer v. Mich. Cent. Ry. Co.*, 48 Mich. 205.

In the last-mentioned case Mr. Justice COOLEY says:

" The responsibility of railroads for injuries to persons by trains can very seldom, if ever, be determined on pure questions of law. Negligence depends too much on the circumstances of the transaction complained of to be capable of any absolute definition by special facts. In order to create liability, something must have been brought about which would not probably have happened if the party complained of had not failed to use the care and precaution which it was wrong not to use under the circumstances. But all the circumstances must be regarded."

I think this is a fair statement of the rule raising the liability. And now what are the facts and circumstances of this case, as presented in the record, most favorable to the plaintiff? It is with those we have to deal, and those only.

The boy killed was about ten years of age, and so far as appears was possessed of the usual intelligence and judgment of boys of his age; and had it not been for the inconsiderate action of the crowd in pushing him against the car, would have taken care of himself and avoided the injury which caused his death. He was accompanied by his brother, who was then thirteen years old; and under these circumstances they had the consent of their mother to go to the junction to listen to the band of music which was then playing and enjoyed by the boys. This discloses no negligence on the part of the parent. The excursion party with the band of music arrived at the junction about noon, from Detroit. The band soon after the party arrived commenced playing, and

continued at intervals until the defendant's train commenced to make up for Saginaw, and up to the time the boy was killed. There was a crowd in front of the depot, and between it and the track, of fifty or sixty men, women and children, part of them wanting to take passage for Saginaw and part had assembled there to hear the music; and among the latter was the little boy who was killed. The ticket agent, who had charge of the station and grounds, as the representative of the defendant company, permitted the playing by the band in front of the depot, knew of the crowd at the depot, and that there were ten or twelve children and three or four boys from the junction among them; saw the boy, Sheldon, there; and was on the platform in front of the depot when the accident occurred. He gave no warning of danger, and heard none given on the approach of the cars when they were backing down.

The testimony further showed in behalf of the plaintiff that the train was backed down to the depot at the rate of five or six miles an hour; that when it was coming the crowd extended from the depot out across the track, and as the cars approached the people had to suddenly leave the track to get out of the way, and if they had not several persons would have been run over; that in making the effort to get out of the way of the backing cars and train there was considerable pushing among the crowd, which then occupied the narrow end of the platform, and as the car came near where the boy stood, not far from the track, the crowd were pressed back, and in making a surge shoved the lad, who was then in the act of getting out of the way, so near to the backing car that he was struck by the steps of the car and carried under the wheel. It is conceded that from the time the engine started back upon the "Y" with the cars no whistle was sounded, and the testimony tends to show (although controverted) that no bell was rung; and, further, if it was, the noise made by the band, and the confusion then taking place, and allowed by the agent of the company, upon the platform, was so great as to render the ringing of the bell entirely useless as a warning.

Mr. Holgrove, who was the brakeman, and was on the back end of the car that struck and killed the boy, testified that he gave the signal to the engineer to stop the train at the time of the accident. He says he was standing on the second step on the north side of the car when he gave the signal to slow down as the train approached the crowd, "saw the boy in the crowd with the rest of them." Just as he got opposite to the boy "the crowd seemed to surge him back;" that "there was an unusual large crowd there that day, and it was more than usually hazardous to back down, and he thought they ought to use more than ordinary care and prudence;" that "as the train came down, either the crowd pushed or surged as the boy stepped back against the track." He further says he gave the crowd no warning, and as the plaintiff's case stands, no warning whatever was given to the crowd by the agents or servants of the defendants of the approach of the cars beyond the movement it made, for it appears that the steam was shut off at the time, and the cars were running from the acquired momentum before reaching the depot.

These are the facts and circumstances upon which we are called upon to say there was no evidence tending to show the defendant in fault. It is true the defendant was under no special duty or obligation to the boy. He had no particular business with the company, and was not at the depot for the purpose of taking the cars, but he was not a trespasser. The testimony shows that the day was one selected by the excursionists for recreation and pleasure, and while they were waiting for the defendant's train at the junction nearly two hours they were permitted the use of the defendant's platform and grounds, between the depot and railroad track, for such recreation, festivities and amusements as they chose upon the occasion. The music was something naturally calculated to attract the crowd. The natural consequences of the defendant's acts and doings, omitted or permitted, should have been anticipated; and when fraught with increased danger, such hazard should have been properly provided against. Nothing of that kind was done in this case. The

defendant was at least entitled to such protection as ordinary care under all the circumstances would require.

That the occasion developed great danger is very apparent from the record. Whether the degree of care exercised was commensurate with the duty devolved upon the defendant, under all the circumstances, was a fact, I think, peculiarly within the province of the jury; and we cannot say that under the testimony introduced there was no evidence tending to show a neglect of such duty, and its sufficiency was alone for the jury.

Having come to this conclusion, it is quite unnecessary to consider the case further. The judgment should be reversed and a new trial granted.

MORSE, J., concurred.

CHAMPLIN, J. In this case I am constrained, but with great reluctance, to concur with the conclusion reached by my Brother SHERWOOD. Upon the whole testimony it very satisfactorily appears to my mind that the plaintiff is not entitled to recover. But this conviction is the result of the *weight* of testimony introduced, both on the part of the plaintiff and defendant. I think the testimony should have been submitted to the jury.

CAMPBELL, C. J. (*dissenting.*) I have examined the case presented by the plaintiff with care, and do not think that it shows anything indicating negligence, or that a jury could legally find that the accident involved any misconduct on the part of defendant's employes. I think the judgment was correct, and should be affirmed.