SCHULTZ *v.* MICHIGAN UNITED RAILWAYS CO.

1. NEGLIGENCE—STREET AND INTERURBAN RAILWAYS—OPERATION OF CARS—PLEADING.

A declaration against a street railway company is not subject to the objection that it does not state the means by which a car was suddenly started, when it alleges that the defendant first slackened the speed of the car as if to stop for the station at which the plaintiff intended to alight, then suddenly and negligently started the car forward with great and unreasonable force and swiftness, throwing the plaintiff from the car.

2. SAME—CONTRIBUTORY NEGLIGENCE—CONDUCT OF PASSENGER—
   ALIGHTING FROM CARS.

   It is not negligent, as a matter of law, for a passenger to leave
   her seat as the car slackens speed in approaching a station
   and to go towards the exit preparatory to alighting.

3. SAME—OPERATION OF CARS—ACCELERATION OF SPEED.

   It is not negligence for the servants of a carrier of passengers,
   in ignorance of the fact that the plaintiff had left her seat for
   the purpose of alighting at her destination, to suddenly in-
   crease the speed of the car.

4. SAME.

   The decrease and increase of speed in the operation of electric
   cars are the ordinary incidents of travel and are not proof of
   negligence.

   MOORE and MONTGOMERY, JJ., and BLAIR, C. J., dissenting.

Error to Calhoun; North, J. Submitted April 29,
1909. (Docket No. 23.) Reargued October 11, 1909.
Decided December 10, 1909.

Case by Susie R. Schultz against the Michigan United
Railways Company for personal injuries. A judgment
for plaintiff is reviewed by defendant on writ of error.
Reversed.

*Sanford W. Ladd*, for appellant.

*William E. Ware*, for appellee.

Plaintiff recovered a verdict and judgment for injuries
sustained August 23, 1906, while she was a passenger on
one of defendant's interurban cars in the city of Battle
Creek. She boarded the car at the station of the company
in the city to ride to a point in the outskirts of the city at
the intersection of Marshall and Marjorie streets, where
there is a waiting room maintained by defendant and a
landing, at which defendant's cars usually stop upon re-
quest. The station is known as "Postumville." She
was carrying a parasol and a flatiron holder. Testimony
introduced in her behalf tends to prove that she paid the
usual fare to the conductor, signified to him her desire to

alight at Postumville, and received by word of mouth or otherwise the acknowledgment of the conductor that he understood her desire.  She did not thereafter communicate with the conductor.  It does not appear that he was near her, or that he saw her when she started to leave the car, or that the motorman knew of her desire to leave the car.  She understood that the car upon which she was riding was known as a limited car, had often ridden over this part of defendant's line, knew the cars made quick time—fast time—that they were heavy and operated by powerful motors, stopped quickly, and started quickly. The car was 60 feet in length, and it was stated at the argument that it weighed 39 tons.  She and her sister occupied the last seat in the car; the extreme rear of the car being occupied as a smoking compartment.

She testified :

" When we got up to Postumville, the car slackened up for me to get off, and I gets up and goes out, and just as I gets out where I am going to step down he jerked the car full force and pulled the bell rope, and that is the last I remember, and I struck on this shoulder [indicating] first.

"*Q.* Now, when you got up from your seat, where did you go ?

"*A.* I went to get out.   The car was slacking for me to get out.

" *Mr. Ladd:* I object to that, and move to strike it out as a conclusion of the witness.

" *The Court:* The  part ' for me to get off ' may be stricken out.

"*Q.* Now, I want you to be careful, and tell me where the car was in reference to Postumville station when, as you say, the car slackened up ?

"*A.* Right there by the station.

"*Q.* Now, you may describe as near as you can how the car was running before it slacked up and how it run when it did slack up.

"*A.* It was running with quite full speed after it crossed the Grand Trunk tracks [80 rods west of Postumville], and, when it got up there toward this little waiting room, it slacked up and it kept slacking up until it got almost to the station where I was to get off, and it slowed down, and I thought it was slowing down for me to get off, so I

gets up out of my seat, and says to my sister, 'Good-bye,' and I went out, and just as I got to where I was just stepping down on the platform, I was in the little entrance, the motorman jerked the car full force, and he rung the bell.

"*Mr. Ladd:* I object to the statement about the motorman jerking the car full force, as being a conclusion of the witness not based upon fact, and move to strike it out.

"*The Court:* I think the part with reference to the motorman may be stricken out.

"*Q.* Now, you say the car slowed down and was going very slow, and as it was going along slowly you may state what happened.

"*A.* I was thrown from the car when they started it up full force. It threw me out. That was the last I remember until I was picked up.

"*Q.* Did the car stop?

"*A.* No, sir; it did not.

"*Q.* Did you make any attempt to get off of your own accord except to go to the back end of the car?

"*A.* No, sir. * * * After being thrown from the car, Mr. Miller immediately picked me up. Mr. Martin was there also. There was no one else there that I remember of at the present time, but my husband was near by there."

She further testified that she thought she struck the ground a dozen feet east of the station, but did not realize she was hurt until she was picked up, and that she walked home with her husband, a distance of about two blocks. On cross-examination:

"*Q.* Just when you got to that rear door, the car had been slacking down before this, you say?

"*A.* Yes, sir.

"*Q.* Then the car suddenly started up, and threw you out of that door and off, is that correct?

"*A.* It jerked, the car gave a jerk, and they rung the bell. * * * It threw me out. This door was between the aisle that we have been talking about and the rear platform of the car, because I struck my shoulder there. * * *

"*Q.* And, just as you got to this rear door expecting to get out, the car started up suddenly with a jerk, didn't it? Is that correct?

"*A*. It jerked and threw me out.

"*Q*. And threw you through this rear door ?

"*A*. Yes, and out into the street.  It threw me through the door and onto the platform and onto the ground."

The vestibule of the car was inclosed on three sides.  Only the side on the south or station side of the car was open. The waiting room referred to was on the south side of Marshall street, in which defendant's tracks are laid, and to the east of it and connecting with the walk running north from the Postum Cereal Company's plant is a landing.  The car was going east.  There was an upgrade east of the station.  The car made no stop until it reached Marshall.  Plaintiff's witness Martin testified that he saw plaintiff just after she struck the ground and went to assist her; that she got up without assistance, and that he should think she struck the ground about 20 feet east of the private walk which has been referred to.  Frank Miller, a witness called for the defendant, testified that he was standing five feet east of the platform or landing; that he saw plaintiff on the platform of the car as the car passed, and there were three or four men also on the platform; that she alighted or fell to the ground, and struck the ground about 15 feet east from him.  The sister of plaintiff rode on the car to Marshall, and did not know until the next day that plaintiff had been hurt.  She testified that at the time the car passed Postumville the conductor was in the forward end of the car, kneeling down for some purpose; that she noticed the slacking of speed as the car approached the Postumville waiting room, noticed the increased speed; that the increase of speed was sudden, nearly jerking some packages which she had in her lap off her lap.  To the west of Postumville station defendant's line is double tracked.  Directly north of the landing which has been referred to and from thence east there is a single track; the switch points being substantially north of the center of the landing.  The car approached the station on the south track; its direction immediately north of the waiting room and landing being

upon the curve to the north and to the single track. The duty of the defendant and the negligence averred in the first count of the declaration—the second count was withdrawn from the attention of the jury by the court—is as follows:

"And thereupon it then and there became and was the duty of the said defendant to safely and securely carry and convey the said plaintiff from its said station in the said city of Battle Creek to its said station at Postumville aforesaid in the said car, and, upon the arrival of said car at said station at Postumville aforesaid, to stop the said car there, and give the said plaintiff reasonable time and opportunity while exercising due care and prudence on her part to safely and securely alight therefrom to the ground, and to so control, manage, and operate said car by its servants and employés then and there in charge and control of said car as not to impel and throw said plaintiff from the said car to the ground at its said station at Postumville aforesaid. Yet the said defendant by its said servants and employés then and there in charge and control of said car carelessly and negligently, disregarding the said duties of said defendant in the premises, then and there upon the arrival of said car at the said station at Postumville did not stop said car there, and give the said plaintiff reasonable time and opportunity while exercising due care and prudence on her part to safely and securely alight therefrom to the ground, and did not so control, manage, and operate the said car as not to impel and throw the said plaintiff from the said car to the ground at its said station at Postumville aforesaid. But the said defendant by its said servants and employés upon the arrival of said car at said station at Postumville aforesaid, and as the said car was approaching near to the said station, slackened the speed of said car as it approached the said station, and then and there at the said station, while the said plaintiff with all due care and prudence on her part was standing within the said car and near the rear doorway thereof through which it was necessary for her to pass in order to reach the rear platform of said car and the steps leading therefrom out of the said car to the ground, and while the said plaintiff, with all due care and prudence on her part, was standing there near the said doorway ready to pass from within the said car upon and over the said platform and steps of said car to

alight from the said car to the ground should the said car be stopped at the said station to enable her to safely and securely alight therefrom to the ground there, and while the said car was still as aforesaid, moving slowly along there, carelessly and negligently suddenly started and moved the said car forward with great unnecessary and unreasonable force and swiftness, and with such force and swiftness as to impel and throw her, the said plaintiff, violently and swiftly out through the said rear doorway of the said car and off the said car to and upon the ground there at the said station at Postumville aforesaid with great force and violence and against the will of her, the said plaintiff."

The opening statement of counsel for the plaintiff having been made to the jury and plaintiff sworn as a witness, objection to the introduction of any testimony was taken upon the ground that the declaration did not state a cause of action, and that the opening of counsel did not state a cause of action. When the plaintiff rested, the court was moved to direct a verdict for defendant because (*a*) the declaration did not state a cause of action; (*b*) proofs did not conform to the allegations of the declaration; (*c*) no negligence of the defendant had been proven; (*d*) the proofs did show plaintiff to be guilty of contributory negligence. A witness having been sworn for the defendant, who gave testimony concerning the speed of the car as it passed the station at Postumville, and that it was moving at the rate of eight or ten miles an hour (this testimony is not disputed and is the only testimony upon the subject), and after some rebutting testimony had been introduced, the court was again moved to direct a verdict for the defendant for the reasons already stated.

Instructions to the jury included the following:

"And I also instruct you at this point that the failure of defendant company to stop its cars at Postumville for the plaintiff to get off the car is not the proximate cause of the injury, and did not cause the injury sustained by the plaintiff, and this case is not submitted to you upon that theory at all. It is upon the theory that, if the plaintiff has any right of action at all, it is because of the negligent and

careless manner in which the car was operated while in motion at the time when the plaintiff was in such a position as the circumstances justified after having given the conductor reasonable notice of her intention and desire so to do, if you find these things established from the evidence in the case.

"If you find that the plaintiff became a passenger on one of the defendant's cars by paying her fare to the stopping place at Postumville, I charge you it was the duty of the defendant company on arriving at the place of plaintiff's destination upon being notified by the plaintiff of her desire to leave the car to stop its car a sufficient length of time to enable the plaintiff with the exercise of reasonable diligence to alight in safety, and if upon reaching her stopping place the plaintiff gave the conductor of the car reasonable notice of her desire to leave the car, and as the place was approached, this stopping place, that the car slowed down in such a manner as to lead the plaintiff to reasonably believe that the car was about to stop to let her off, then I charge you as a matter of law that it would not necessarily be negligence on the part of the plaintiff to start to the rear of the car so that she would be in a position to alight with celerity upon the stopping of the car, but in doing so she is bound to exercise reasonable care and caution to avoid accident or injury. If you find from the evidence that the plaintiff did so attempt to approach the rear of defendant's car and that, as she reached the rear end of the car, the defendant, through its employés, carelessly and negligently accelerated the speed of the car as it reached the place where plaintiff was to alight, and in consequence thereof and without any negligence on the part of the plaintiff she was thrown from the car and injured, she has a right to recover in this case, provided she sustained damages as the result thereof, but the plaintiff, as I have stated to you before, is bound to observe such precautions for her own safety as reason and prudence might dictate, and, if disaster came to her by reason of her failure to do so, then she cannot recover in this case."

OSTRANDER, J. (*after stating the facts*). Confining discussion to the points made by appellant, we find the objection to the declaration to be that it does not state by what means the car was suddenly started. It is alleged

that the defendant first slackened the speed of the car, and then carelessly and negligently suddenly started and moved the car forward with great unnecessary and unreasonable force and swiftness. The consequences to the plaintiff of such movement, it being alleged that she was careful, are stated. The implication is that defendant's servant voluntarily controlled the movement of the car. The objection is without force.

It is next contended there is no evidence of defendant's negligence, for which reason a verdict for defendant should have been directed by the court. This contention is, under the peculiar facts of the case, so intimately connected with the subject of plaintiff's negligence that the subjects may properly be considered together. It is clear that those operating this car did not intend to stop the car at Postumville. They did not operate it, and did not intend to operate it, so as to permit her to alight there. The reasonable, perhaps the necessary, inference to be drawn from the testimony, is that this car was in control of the motorman, was in proper running order upon a proper track, and that the increase of speed complained about was occasioned by the application of power. The movements of cars to and over switches are incidents of railway travel. It is neither negligent to decrease the speed of an electric car in approaching and passing a switch nor negligent to increase its speed after passing the switch by the application of power or the release of brakes, or both. Ordinarily such operation is regarded as prudent operation. Assuming that none of the passengers upon the car desired to alight at Postumville, the testimony wholly fails to show negligence in its management or its operation. It is only by assuming that because defendant owed to the plaintiff the contract duty to permit her to alight there, and because her position in the car was due to reliance upon a performance of this duty, and the diminished speed, therefore the car was negligently operated, and therefore plaintiff was without fault. This assumption in-

volves the duty of defendant in the exercise of due care to anticipate that plaintiff would leave her seat, as passengers often and perhaps commonly do, and approach the door of the car before arriving at the station. It is not claimed that any servant of defendant saw plaintiff during her passage from her seat to the door. Under the circumstances disclosed, it cannot be said, as matter of law, that in passing to the door while the car was in motion the plaintiff was negligent. *Bradley* v. *Railway Co.*, 94 Mich. 35, 38 (53 N. W. 915); *Etson* v. *Railway Co.*, 110 Mich. 494, 496 (68 N. W. 298). Neither should it be said that the operation of the car, otherwise proper, was negligent operation because plaintiff did leave her seat. She had the right to remain in her seat until the car had stopped. Defendant was not bound to take notice that she would do what her testimony disclosed she did do. If it were otherwise, the fact of prudent or imprudent operation of cars would depend upon the actions of those individuals who insist upon boarding and leaving a car before it arrives and without regard to the immediate presence or absence of those in charge of the vehicle. I am not able to distinguish the case in principle and *Etson* v. *Railway Co.*, *supra*. In that case the car, by a sudden acceleration of speed, moved forward to its stopping place while plaintiff was in the position—out of his seat—assumed by him for the purpose of quickly alighting. In the case at bar, the car did not stop at the regular place for alighting, but, with an increase of speed, ran by the station.

The judgment is reversed, and a new trial granted.

GRANT, HOOKER, McALVAY, and BROOKE, JJ., concurred with OSTRANDER, J.

MOORE, J. (*dissenting*). I cannot agree with the conclusion reached by Justice OSTRANDER in this case.

The plaintiff got upon the car at the station of the company in the city of Battle Creek to ride to a point in the outskirts of the city, where there is a waiting room main-

tained by defendant, at which defendant's cars usually stop upon request. The station is known as "Postumville." Testimony introduced in her behalf tends to show that she paid the usual fare to the conductor, and at the same time told him she wanted to alight at Postumville, and received by word of mouth or otherwise the acknowledgment of the conductor that he understood her desire. The record also shows that she had frequently taken this car and alighted at Postumville. She testified:

"When we got up to Postumville, the car slackened up for me to get off, and I gets up and goes out, and just as I gets out where I am going to step down he jerked the car full force and pulled the bell rope, and that is the last I remember, and I struck on this shoulder [indicating] first.

"*Q.* Now when you got up from your seat, where did you go?

"*A.* I went to get out. The car was slacking for me to get out.

"*Mr. Ladd:* I object to that, and move to strike it out as a conclusion of the witness.

"*The Court:* The part 'for me to get off' may be stricken out.

"*Q.* Now, I want you to be careful, and tell me where the car was in reference to Postumville station when as you say the car slackened up?

"*A.* Right there by the station.

"*Q.* Now, you may describe as near as you can how the car was running before it slacked up, and how it run when it did slack up.

"*A.* It was running with quite full speed after it crossed the Grand Trunk tracks [80 rods west of Potsumville], and, when it got up there toward this little waiting room, it slacked up and it kept slacking up until it got almost to the station where I was to get off, and it slowed down, and I thought it was slowing down for me to get off, so I gets up out of my seat and says to my sister 'Good-bye,' and I went out, and just as I got to where I was just stepping down on the platform, I was in the little entrance, the motorman jerked the car full force and he rung the bell.

"*Mr. Ladd:* I object to the statement about the motorman jerking the car full force as being a conclusion of the witness not based upon fact and move to strike it out.

"*The Court:* I think the part with reference to the motorman may be stricken out.

"*Q.* Now, you say the car slowed down and was going very slow, and as it was going along slowly you may state what happened?

"*A.* I was thrown from the car when they started it up full force. It threw me out. That was the last I remember until I was picked up.

"*Q.* Did the car stop?

"*A.* No, sir; it did not.

"*Q.* Did you make any attempt to get off of your own accord except to go to the back end of the car?

"*A.* No, sir. * * * After being thrown from the car, Mr. Miller immediately picked me up. Mr. Martin was there also. There was no one else there that I remember of at the present time, but my husband was near by there."

She further testified that she thought she struck the ground a dozen feet east of the station, but did not realize she was hurt until she was picked up, and that she walked home with her husband, a distance of about two blocks. On cross-examination:

" *Q.* Just when you got to that rear door, the car had been slacking down before this you say?

"*A.* Yes, sir.

" *Q.* Then the car suddenly started up, and threw you out of that door and off? Is that correct?

"*A.* It jerked, the car gave a jerk, and they rung the bell. * * * It threw me out. This door was between the aisle that we have been talking about and the rear platform of the car, because I struck my shoulder there. * * *

"*Q.* And just as you got to this rear door, expecting to get out, the car started up suddenly with a jerk, didn't it? Is that correct?

"*A.* It jerked and threw me out.

"*Q.* And threw you through this rear door?

"*A.* Yes; and out into the street. It threw me through the door and onto the platform, and onto the ground."

We have, then, a situation where the testimony tends to show that a passenger has taken an electric car for a given station, has paid to the conductor her fare to that

station, has told him where she wishes to alight, and has his assurance that she will be permitted to alight at that station. This is followed by the further fact that, as the car approached the station, it ran much slower, as though it was about to stop at the station to which the fare was paid, and where the passenger had told the conductor she desired to alight, and where she had been assured he understood her. Was she guilty of contributory negligence in doing what she testified she did ? What constitutes contributory negligence has been defined in many cases and text-books. The following is a fair statement of the law :

" Contributory negligence means the failure to observe that degree of care which ordinarily careful and prudent persons usually observe under the same or similar circumstances to protect themselves from harm, which failure helped or caused the injury. *McLaughlin* v. *Louisville Electric Light Co.*, 100 Ky. 173 (37 S. W. 851, 18 Ky. Law Rep. 693, 34 L. R. A. 812)." 2 Words & Phrases, p. 1543.

Was what was done by plaintiff contrary to this rule ? It is a matter of common knowledge that passengers upon electric cars as their street or station is approached, and the car lessens its speed, arise from their seats, and go toward the exit of the car preparatory to alighting. It is a matter of common knowledge that this is expected of them by conductors. So far as I know, it has never been decided that to do this is not the exercise of that degree of care which ordinarily careful and prudent persons observe under like conditions. Whether, under the facts disclosed by this record, plaintiff was guilty of contributory negligence, presented a case peculiarly within the province of the jury.

But it is said no negligence is proven on the part of defendant. It has already appeared that her fare was paid and accepted to Postumville; that the conductor was informed where the passenger desired to alight; that she was assured he understood; that the car slackened as

though to stop; that the passenger proceeded, as she had a right to proceed, toward the exit, with a view of alighting where she had a right to expect she would be allowed to leave the car, and, while she was where she had a right to be, without warning, the car is suddenly started with such violence as to throw her with great force out of the open doorway. If, under this proof, the court may say, as a matter of law, that the inference of negligence may not be fairly drawn by the jury, then there remains little for the jury to do in this class of cases.

I think the judgment should be affirmed.

BLAIR, C. J., and MONTGOMERY, J.. concurred with MOORE, J.