VULTEE v. SAGINAW-BAY CITY RAILWAY CO.

1. CARRIERS—NEGLIGENCE—CHARGE—TRIAL.

In an action against a carrier for injuries sustained in descending from a street car, the charge of the trial court was not erroneous in referring the jury to the claims made by respective counsel in their arguments, especially if accompanied by full instructions to be governed by the evidence before them and by the cautionary instruction that the argument of counsel was not to be considered as testimony: the objection that the arguments were treated as evidence thereby was untenable.

2. SAME—TRIAL—CHARGE.

Nor was the trial court in error in advising the jury that if the place where plaintiff alighted was a usual stopping place for cars, it became the duty of defendant to so govern the stopping and starting of the car as to afford plaintiff a reasonable opportunity to alight and if the jury found that plaintiff, without negligence on her part, was thrown while attempting to alight there, sustaining such injuries, as she alleged, she was entitled to a verdict and the instructions sufficiently covered the duty of defendant to give an opportunity to leave the car, and was not misleading in the connection in which it occurred.

3. SAME—PERSONAL INJURIES—EVIDENCE.

    *Held*, also, that the evidence, being conflicting, sufficiently sustained a verdict for plaintiff.

Error to Bay; Collins, J. Submitted April 6, 1915. (Docket No. 116.) Decided June 7, 1915.

Case by Amy L. Vultee against the Saginaw-Bay City Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Weadock & Duffy*, for appellant.

*C. E. Pierce* and *L. G. Beckwith*, for appellee.

MOORE, J. This is a personal injury case brought to recover damages which plaintiff claims she sustained when alighting from one of the cars of defendant. From a verdict and judgment of $250 in her favor, the case is brought here by writ of error.

The errors assigned and relied upon are grouped by counsel for appellant as follows:

    (1) Upon the admission of testimony.
    (2) Refusal of the court to charge as requested in defendant's written requests to charge.
    (3) Upon the charge as given.
    (4) The refusal to grant a new trial.

1. We have examined this group of errors assigned, and shall content ourselves with saying we think no reversible error was committed in relation thereto.

2. There were many requests to charge. A considerable portion of them requested a directed verdict and may be discussed with group 4. The remaining requests related to various phases of the case and may be considered with the charge as given. The important parts of the charge as given were as follows:

"It is a fact that at this place the plaintiff in some manner descended from the car of defendant upon

which she was riding. Speaking of that, I use the word descended so as to avoid all questions of dispute as to the manner of her getting off the car, and I will speak of that as descended from the car at that time, and there is no dispute about the fact that the defendant was injured at the time and place in question.

"There is a very serious dispute of fact covering the entire case, although this dispute of fact is not in a very large compass. Now, you have heard the testimony and you have heard the arguments of counsel, and I refer you to those for a statement of the claims of the respective parties, but for my purpose in giving you this charge I will make a brief statement of the claims of both parties.

"It is the claim of the plaintiff that she was a passenger on the car in question at the time and place in question going from some place on Washington street to her home; that the car made the turn at Columbus avenue from Washington street, and approached the railway spur track at the place in question, and it is the claim of the plaintiff that she gave a signal to the conductor for alighting, and that while she was alighting or attempting to alight from the car, by the sudden starting of the car she was thrown down and injured.

"Now, that is a brief statement of plaintiff's claim, but not necessarily all of it.

"It is the claim of plaintiff that as a matter of law it is the duty of the street railway company, where there is a usual place for passengers to alight, to afford a reasonable time for passengers to get off of a car, and it is the claim of plaintiff that the place in question where she descended from the car was a usual stopping place.

"The defendant denies that the plaintiff's statement of the transaction is the correct statement. There is no question, as I understand it, about this being a usual stopping place, but the defendant denies that the plaintiff's injury was occasioned by her getting off in the way she claimed that it happened.

"It is the claim of the defendant that the plaintiff descended from the car while the car was in motion, and the manner of that is described by witnesses, and the defendant claims in short upon this point that the plaintiff, instead of waiting until the car came to

a stop, or substantially so, got off the car while the car was in motion, and in that way was injured. So there is the conflict of fact, and there is where the controversy is, and there is where it becomes your duty to decide between these parties.

"Now, the case is divisible into two propositions: The first proposition is, was the defendant guilty of actionable negligence; if not, that would end the case. If, however, you find that the defendant is guilty of actionable negligence, then you will proceed to discuss the question of damages.

"I will first charge you upon the law as respects the question of fact as to whether or not the defendant is guilty of actionable negligence. I tried to make clear the disputes of fact involved and may refer to them again.

"I do not consider that it is necessary in this case to make a formal definition as to what is or is not negligence, because the controversy is a sharp and distinct one, and the question of fact is so clear and plain that I might obscure it by going too much into that detail. I state this, however, as a leading proposition in the matter to control you and guide you in the case.

"This is an action of negligence, and before the plaintiff can recover in this case, she must show, *first*, that the defendant was negligent; *second*, she must show, also, that at the time and place in question she herself was not negligent, because if she herself was negligent then she would be guilty of what is called in law contributory negligence, and her contributory negligence would defeat her right of recovery.

"Now, gentlemen of the jury, if it is a fact, as I said before, there does not seem to be any controversy about it in this case, that this place where the plaintiff was proposing to get off the car and where the accident happened was a usual stopping place for the railway company to stop its cars, then I charge you that the officers of the company, the conductor and motorman, one or both of them, whoever had charge of the car, on approaching this railroad crossing where people were accustomed to get on and off, it became their duty to so regulate the stopping and starting of the car at that point as to give plain-

tiff ample or reasonable opportunity to alight therefrom, and if you find from the evidence that the plaintiff, Mrs. Vultee, without any fault or negligence on her part, was thrown from the car while alighting, or attempting to alight therefrom, at that point by the sudden starting of the car, and thereby sustained injuries, your verdict will be for plaintiff.

"Before the plaintiff can recover, the plaintiff must prove these propositions by the greater preponderance of the testimony; that is, by the greater weight of the testimony.

"Now upon this point, gentlemen of the jury, I further charge you that if, when plaintiff descended from the car, the car was then in motion and had not come to a complete stop, and then it had suddenly started again, the plaintiff cannot recover. If plaintiff was not thrown off by the sudden, abrupt starting of the car, the plaintiff cannot recover.

"If the plaintiff descended from the car while it was in motion and before it came to a stop, or substantially so, the plaintiff cannot recover.

"Now I believe that this puts before you, the charge that I give puts before you the claims of the parties, and puts before you the disputed questions of fact, so that you can, as readily as the case will permit, pass upon the same. I will give you some further charges on some further details of the case.

"The defendant company was not in any way an insurer of the safety of plaintiff while the plaintiff was a passenger upon or alighting from this car. The street railway company is not an insurer of the safety of its passengers. I have stated already its liability and duty at the time and place in question.

"If you find the plaintiff was guilty of any negligence contributing to her injuries, if any, then she is not entitled to recover. I also charge you, as a matter of law, that there was no duty or obligation on the part of the conductor or the motorman of the car to assist the plaintiff in alighting from the car.

"It is the duty of you gentlemen to hear and decide this case precisely as if it were a suit between two individuals. The fact that the plaintiff is a woman and the defendant a street railway company should make no difference with you in considering and deciding the case.

"In arriving at your verdict you are to be governed solely by the evidence in the case as to the facts, and by the instruction of the court, as to the law of the case, and find your verdict accordingly, without reference to who the plaintiff is or who the defendant is, and without being influenced by sympathy or other improper motives.

"Now, gentlemen of the jury, this case must be decided by you upon the testimony given in the case, and all reasonable deductions therefrom, and the charge as given you by the court. The statements of counsel are not evidence in the case. You are privileged to draw such reasonable inferences from the testimony as you think it will warrant. You are the judges of the credibility to be given to each witness that comes upon the stand and that applies to the plaintiff because the plaintiff has been a witness; and considering all the circumstances in the case, and weighing all of the matters of probability and improbability, and considering all of the testimony, you have the right in the exercise of your best judgment to believe or disbelieve the whole or any part of the testimony of any witness.

"Now, I have said to you, and it is the law, that the burden of proof is upon the plaintiff to show by the greater weight of the testimony all of the facts essential for her recovery in this case, including that she must prove that the company was negligent and that she was not negligent. The greater weight of the testimony does not depend upon the number of witnesses. But in considering the testimony of all of the witnesses, if there is a dispute between witnesses on a given point, and there are more or less witnesses upon that point upon the respective sides, you have the right to take into consideration the number of witnesses who testify in considering the question. The great point is the greater weight of testimony, but in considering where the greater weight is you are privileged to consider the number of witnesses testifying on either side of the case.

"Now, gentlemen of the jury, I advise you first to take up the question as to whether the defendant is or is not liable. If you find that the defendant is not liable, that will end the case. If you find the defend-

ant is liable then I charge you upon that subject as follows upon the question of damages.

"I charge you as a matter of law that there is no testimony in the case that plaintiff has expended anything herself for medicines, drugs, nursing, hired help, physician's services or osteopathic treatments, and you will therefore not allow damages, if you find that plaintiff is entitled to damages for these items. Nor will you allow her any damages for her services in or about her home or elsewhere, as these items the law does not permit her to recover for.

"If you find for plaintiff however, and find that she is entitled to recover damages, your verdict will be for the plaintiff in such an amount of damages as you may decide will compensate her for the actual physical injuries she received, and for the pain and suffering and sickness resulting therefrom, and for such inconvenience and deprivations as she has suffered by reason of her being deprived of the pleasures, enjoyments, and diversions to which she had heretofore been accustomed, and which she was thereby rendered incapable of taking part in.

"My giving a charge upon the measure of damages does not indicate that I have any view one way or the other upon that subject, but it is my duty by my charge to cover all the questions in the case."

Special criticism is made of the portion of the charge reading:

"Now you have heard the testimony and you have heard the arguments of counsel and I refer you to those for a statement of the claims of the respective parties."

It is said this permitted the jury to take the statements of counsel as evidence in the case. We do not think the jury was misled, especially in view of what the judge charged them about being governed by the evidence and his statement in connection therewith that "the statements of counsel are not evidence in the case."

Criticism is made of the following:

186 Mich.—34.

"It became their duty (defendant's) to so regulate the starting and stopping of the car at that point so as to give plaintiff ample or reasonable opportunity to alight therefrom."

When read in connection with what precedes and follows it, we do not think this is misleading.

The important question is: Was there evidence that justified the submission of the case to the jury? Appellant insists there should have been a directed verdict, citing *Conroy* v. *Railway*, 139 Mich. 173 (102 N. W. 641, 104 N. W. 319); *Snyder* v. *Traction Co.*, 154 Mich. 418 (117 N. W. 889); *Schultz* v. *Railways Co.*, 158 Mich. 665 (123 N. W. 594, 27 L. R. A. (N. S.) 503).

This contention of counsel makes it necessary to refer to some of the testimony. The evidence given by the plaintiff was in part as follows:

"I arose, as there is no push button in the car, in the open car—there is a bell rope, I understand, above the car, but very unhandy to reach for a person—and I got up, and I said, 'Hoo-hoo!' like that, as it has always been Mr. Vultee's signal, and I hollered to the conductor, when there is no bell, and I rose and hollered that way to the conductor, and he jumped off this time, and I stepped by this man that was sitting there and got to the running board, and I put one foot, my right foot, down on the running board, and held onto the car with my left hand, and just then I saw the conductor ran ahead and signaled the car in this way as he always does, and I turned to protect the children from falling, and seeing that the conductor had signaled the car to start ahead, because that is their signal and I turned also to guard with my right hand, to protect myself and the children, for they were coming, and the car jolted ahead quickly and threw me off. When I turned I landed in the street on my right side, my head down toward the river and my feet up toward the car. * * *

"*Q.* Was the car slowing down or increasing in speed or what with reference to its running was the

car doing after you signaled and while you were stepping toward the running board?

"*A.* The car had stopped when I got to the running board."

On the cross-examination:

"*Q.* You had hold of the stanchion with your left hand then?

"*A.* Yes.

"*Q.* And your right foot was then on the running board?

"*A.* My right foot was then on the running board.

"*Q.* Where was the car with reference to your house?

"*A.* Right in front of the house.

"*Q.* Had any one stepped off the car there?

"*A.* No.

"*Q.* You were the only person to get off?

"*A.* Yes.

"*Q.* How long did the car stop there?

"*A.* It does not stop but a second sometimes.

"*Q.* How long did it stop there that night?

"*A.* It did not stop but a second, I should judge.

"*Q.* You could not step off the car in a second?

"*A.* The car slows down and just stops, and starts right up again.

"*Q.* What did it do that time?

"*A.* Just slowed down and stopped and started right up again, did not give me time to step off.

\*   \*   \*

"*Q.* Isn't it a fact that you got up there in your seat to get off there at this usual place there that night, and before the car had ever come to a stop you had gotten off the car and fell down?

"*A.* No, sir.

"*Q.* That is not true?

"*A.* No, sir.

"*Q.* That is not the way it happened?

"*A.* No, sir.   \*   \*   \*

"*Q.* You stated in response to your counsel's question, I think, on direct examination, that the time you stepped to the running board that the car had come to a dead stop?

"*A.* Yes, when I stepped my foot on the running board the car had stopped.

"*Q.* You were attempting to bring forward the other foot to step down when the car started ahead?

"*A.* I was just going to; yes."

The nine-year old daughter of the plaintiff, who was with her mother, testified in part:

"I have ridden on those cars before, going home. We would get right off in front of our house. The car always stopped because there was a railroad track. The cars stopped even if there wasn't any one to get off. It did stop always. My mother was sitting on the second last seat. There was another seat back of her. I and my sister were sitting on the same seat with her. She sat in the middle. A man sat between her and the end of the seat. We were sitting on the side away from the man by the side of my mother. The car stopped that night in front of our house.

"*Q.* Now tell in your own way, if you can, just how it happened that your mother was hurt.

"*A.* She stood up to get off, and hollered to the conductor, and he jumped off the car to run, and just as mamma was going to get off he waved his hand, and the car jerked and threw her. He waved his hand, and the car jerked, and threw mamma on the pavement. When the car jerked, she was standing one foot on the running board and one foot on the platform of the car. She was holding onto the board that goes up and down. At the end of the seat is that board. She was holding on with her left hand. She was facing our house away from the conductor. The car was running when she hollered to the conductor. The car was not running when she stepped down on the running board. It had stopped between those two times."

On the other hand there was testimony that plaintiff stepped from the car before it stopped at all.

Counsel for plaintiff insists that the testimony showing that when plaintiff was picked up she was lying on her right side with her feet toward the car and her head away from it, justifies the inference

that she was thrown from the car and did not step from it while it was in motion.

Defendant disputes the testimony in relation to the position of the plaintiff on the pavement. In fact the record is full of contradictory testimony. This conflicting testimony made the case a proper one for the jury. *Conely* v. *McDonald,* 40 Mich. 150, 158; *Swoboda* v. *Ward,* 40 Mich. 420, 424; *Rosie* v. *Willard,* 44 Mich. 382, 383 (6 N. W. 872); *Maxwell* v. *Bridge Co.,* 46 Mich. 278 (9 N. W. 410); *Sheldon* v. *Railroad Co.,* 59 Mich. 172, 175 (26 N. W. 507); *Brezee* v. *Powers,* 80 Mich. 172, 182 (45 N. W. 130); *Weidman* v. *Symes,* 116 Mich. 619, 620 (74 N. W. 1008); *Foster* v. *Lumber Co.,* 141 Mich. 316 (104 N. W. 617); *Holmes* v. *Smith,* 149 Mich. 327 (112 N. W. 912).

Judgment is affirmed.

BROOKE, C. J., and McALVAY, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.